# William Hoy, Administrator of James M. Buckner *v.* Calvin Hansborough *et al.*

The liability of the obligors in a bond of indemnity arises exclusively out of the contract set forth in the bond. The bond, therefore, which created the liability must determine the extent of the same. Where a bond of indemnity was conditioned to "save harmless and indemnify the said James M. Buckner, his heirs, &c. from all loss and injury, damages, costs, and charges that shall or may at any time hereafter accrue to him or be incurred by him, his heirs, &c. by reason of the liability of the said James M. Buckner, on the said promissory notes," (previously set forth in the bond,) " or any of them, then the above obligation shall be void, otherwise to be in force," &c. Held by the court, that the complainant is not entitled "to any remedy either at law or in equity, until the contingency has arisen upon which his right of action was to accrue ; until, according to its terms, he has sustained some injury, incurred some loss, or suffered some damage, or been damnified by the payment of costs and charges resulting from the failure of the defendants to pay off or discharge the debts therein enumerated."

A covenant to indemnify against a debt, is not necessarily a covenant to pay that debt. The defendants may take up and cancel the original evidence of the debt by which the complainant is bound, and substitute new and distinct liabilities; or they may interpose some legal ground of defence to the suit of the creditors, and defeat a recovery. In both of these instances, the condition of the bond would be fully complied with, and the complainant have realized the whole object of the contract.

In order to recover upon a mere bond of indemnity, actual damage must be shown. If the indemnity be against the payment of money, the plaintiff must in general prove actual payment; a mere legal liability to pay is not, in such case, sufficient. If the indemnity were against a liability to pay, the rule would be different.

The rule which requires a plaintiff to show a present subsisting right of action, is equally regarded in equity as at law. A court of equity will supply a remedy where none exists at law, but will not create a right of action where the law gives none.

It is a general rule that a court of equity will not decree a specific performance of a mere personal covenant sounding in damages, nor of a contract relating to personalty where compensation may be had at law. Such contracts will only be enforced where the property has some artificial nature, or where the breach of the personal indemnity would be productive of irreparable injury.

This bill states that on the 19th January, 1838, the complainant's intestate, and the defendants, Calvin Hansborough and Jesse Denson, did form a partnership in mercantile business, which partnership was dissolved on the 31st January, 1838, and the

45*

complainant's intestate agreed to retire from the firm, and in consideration thereof took from the defendants a bond, conditioned that they would "save harmless, and indemnify the said James M. Buckner, his heirs, executors and administrators, from all loss and injury, damages, costs, and charges that shall or may at any time hereafter accrue to him, or his heirs, executors, or administrators, for and by reason of the liability of said Buckner," on certain promissory notes of said firm specified in the bond. That the defendants have not indemnified said Buckner from all loss and injury, &c.; and that suits have been instituted in Madison circuit court on some of the notes mentioned in the bond of indemnity, to wit, the notes due by the firm to Porter, Crump & Co. and the judgments would in a short time be recovered thereon against complainants' intestate; that suits will be instituted against him on other notes mentioned in the bond of indemnity, by means of which the complainants' intestate will be ruined, &c.

The answer admits the execution of the bond, as stated, and states that every effort was made after Buckner's retirement from the firm to pay the debts specified by the avails of the partnership fund, and to that end that not only all the debts, effects and moneys, with very small exceptions due the firm before Buckner's withdrawal, but all that had become due to the remaining partners after the withdrawal, were faithfully placed in the hands of a competent trustee in December, 1838, for the sole purpose of liquidating the debts mentioned in the bond. Said assets are more than double the amount of the debts mentioned in the bond. Many of said assets have proved insolvent; but defendants acted in good faith in placing the assets in the hands of the trustee, and if Buckner had remained in the firm, it would have been impossible for him to manage the affairs of the firm so as to avoid suits. That the assets placed in the hands of the trustee as aforesaid were thus applied to pay debts contracted by the firm of Hansborough, Buckner & Co. before defendant Jesse Denson came into said firm; and that the debts which Buckner was indemnified against were not debts for which Denson was liable as a partner in said firm.

The answer shows that Denson became involved in the firm of Hansborough, Buckner & Co. by the fraud and deception of Buckner. That in 1837, Denson was induced by Buckner to become

his surety for a large amount of money, between fifteen and six-teen thousand dollars, due for merchandise purchased by Hans-borough, Buckner & Co. before Denson was a member of the firm. He was induced to become such surety by the assurances of Buck-ner, falsely and fraudulently made, that he was free from embarrass-ment and his property not encumbered; and that he would indem-nify said Denson for becoming his surety, by giving him a deed in trust of property. This he was unable to do; and Denson, find-ing that Buckner had practised a fraud upon him, was compelled to enter the firm of Hansborough, Buckner & Co. in order to do something to secure himself. That Buckner retired from the firm because it was discovered that he was pursuing a course of busi-ness that would ruin the firm, and that he is utterly insolvent.

The answer admits that suits have been brought on a portion of the notes mentioned in the bond, as stated in the bill. The supplemental answer shows that these suits have been dismissed and no judgments rendered thereon. This is proved by the clerk's abstract of the cases filed with the supplemental answer. It also appears that the estate of Buckner has been returned and reported to the probate court of Madison county insolvent. See the exhibit No. 1, filed with the supplemental answer.

WILLIAM THOMPSON for complainant.

Buckner having died, the suit is revived in the name of Wil-liam Hoy, his administrator. The question raised in this case is, whether a bill in chancery to enforce an indemnity will lie. If it will lie, a decree for an account and specific execution will, of course, go.

That it is the most appropriate remedy, as the action at law cannot be sustained till the damage has actually been suffered, which often would be ruinous to the party. See 2 Story's Eq. 145, 146. Champion *v.* Brown, 6 John. Ch. Rep. 406 ; Rane-laugh *v.* Hayes, 1 Ver. R. 189; 2 Ch. Cases, 146; Mosely's Rep. 318. 1 Brown's Ch. Rep. 58.

That the suits which have been brought have been dismissed, cannot alter the case, for they are liable to be renewed at any time. That Buckner's estate has been reported insolvent cannot affect the rights of the parties, for the right that Buckner had to have

the debts which he owed paid according to the bond of indemnity, was for the benefit of the creditors as well as himself; and if Buckner was now living and insolvent, could the parties to the bond of indemnity say to him, as the money cannot be made out of you, you have no right to complain that the partnership debts are not paid. Could not Buckner reply, I have your bond to pay these debts, and in honesty and good faith to my creditors I have a right to see that you do pay them?

And does not the indemnity in fact inure to the benefit of the creditors of Buckner, and of the indorsers on the notes of the partnership? for in the certificate of the clerk of the court filed by defendant's counsel to show the suits have been dismissed, it appears that Hoy and Russell were sued with the principals on said notes.

The administrator has all the rights that Buckner had to demand a specific execution of the indemnity, and is in good faith required to enforce the indemnity as Buckner, if living, would have been required to do and had a right to do.

A. H. HANDY for respondents.

Conceding that there are cases when equity will decree a specific performance of a bond of indemnity, yet the defendants contend that this is not a case where such relief can be given, because,

1. Although Buckner retired from the firm, the answer shows that the conduct of the remaining partners was honest, in appropriating not only the funds and assets due the firm at the time of his withdrawal, but those which accrued afterwards, to the payment of the debts mentioned in the bond. But the firm was insolvent beyond redemption, and the complainant could not have remedied this had he continued in the concern. No profit has arisen to the remaining partners, nor injury happened to the affairs of the firm by complainant's withdrawal. Indeed it is shown by the answer that he was of great injury to the firm by his imprudent conduct in managing its affairs, and that this was the cause of his withdrawal. After the defendants had honestly and faithfully used the means of the firm, due both before and after the complainant's withdrawal, to pay the debts mentioned in the bond, would it not

be unconscionable in behalf of the retiring partner, in a proceeding founded on the bond of indemnity, the true spirit and equity of which was only to secure a faithful application of the means of the firm to the payment of its debts, to require the remaining partners to pay the debts; and although they had gained nothing by the complainant's quitting the firm, to saddle the whole of the debts upon the remaining partners? Such a decree would be no more than a judgment at law for the holders of the debts mentioned in the bond, which is not the spirit and true intent of the bond, as will be afterwards shown. The *bona fides* of the remaining partners will commend them to the protection of a court of equity.

2. The position in which the defendant Denson stood to the complainant in giving the bond of indemnity, resulted from the fraud and deception of complainant practiced on Denson. Before Denson was a member of the firm, he was induced by false assurances of complainant to become surety for a heavy amount of money for complainant's firm. Being deceived into this liability by the fraud of complainant practised upon him, he was compelled to become a member of complainant's firm in order to endeavor to save himself; and from this arose the present relations of the parties. The bond of indemnity resulted necessarily from the original transaction of the parties, for it was given in furtherance of the design of Denson in entering the firm, to wit: to save himself from his liability into which he had been inveigled by the fraud and falsehood of complainant. For the answer shows that complainant retired from the firm because it was discovered that he was pursuing a course of business that would ruin the firm. Nor can an innocent party, honestly endeavoring, without profit to himself, to extricate himself from embarrassment brought upon him by the fraud and deception of another party, be held liable at the instance of that party upon an agreement and arrangement made for the protection of the innocent party, and which he had *bona fide* endeavored to carry out? Must not the complainant have been free from injustice towards the defendants, before he can invoke the aid of equity against them? And do not the facts set forth in the answer convict him of the grossest injustice and fraud? If, therefore, he had sustained injury at the hands of the

defendants, it had its first cause in his own misconduct, and he will not be heard to complain of the results of his own fraud.

3. The manifest intention of the bond was to indemnify complainant "from all loss and injury, damages, costs, and charges that should accrue to him or be incurred by him," on account of his liability in the notes mentioned, and that he should have his redress against the defendants only in the event of his sustaining such loss, damages, &c. Now it is shown by the answers that he is entirely insolvent, and it appears that he is since deceased, and his administrator has reported his estate insolvent, and that the suits commenced on the notes as stated in the bill have been dismissed. He has sustained no loss, therefore, by the suits, and inasmuch as his estate has been reported insolvent to the probate court, he cannot be sued again under the provisions of our statutes, and can never sustain loss or injury by reason of the debts. No other specification of injury or damage is alleged in the bill except the bringing the suits in Madison county, and the answers and references show that all these suits have been dismissed. What loss, injury or damage, then, has he sustained or can he sustain?

The cases referred to by complainants counsel will be found, on a careful examination, not to be applicable to the state of facts in this case. In the case of Ranelaugh *v.* Hayes, 1 Vernon, 189, there was a covenant to indemnify against all debts, accounts, covenants and demands. The covenantee being sued on one of those demands and in danger of suffering thereby, brought his bill against the covenantor, and recovered, because the plain terms and intent of the covenant were broken. In the case of Champion *v.* Brown, 6 John. C. R. 398, there was a covenant in the alternative, to " take up and cancel a particular contract," or to indemnify the covenantee against all damages, costs, &c. to be sustained on account of certain claims and covenants resulting from said contract. The covenantors went into possession of the land and thereby derived benefit from the transaction, but did not take up and cancel the contract according to the covenant, and the covenantees were liable to be sued thereon. The chancellor decreed a specific performance, to wit, a cancelling of the contract as agreed, and an assessment of damages for the non performance. In both these cases the very thing covenanted against had happened, and the

covenant was broken in its plain spirit and intent. In the first case the primary and special object was to indemnify against demands, in the latter case, the covenant was to do a particular thing, the contingency manifestly intended in both cases had happened, and hence the relief in equity was granted. But in the present case, the manifest intention is not the performance by the coven-. antor of a particular thing, but an indemnity against the happening of a particular thing, to wit, the covenantee's sustaining loss, &c. Had it been a covenant that the obligors in the bond would pay the debts or save the obligee harmless, &c. the authority of Champion *v.* Brown might be in point. Or had it been an indemnity against any suit or suits against the obligee on the notes, the case of Ranelaugh *v.* Hayes, might be in point. In each case, a specific thing was covenanted against, and when this thing hap-. pened the covenant was broken. But in the present case, the matter covenanted against is the sustaining loss, damages, &c. and to allow the complainant to sustain his bill, without showing such loss, &c. would be not to enforce the specific performance of the contract of the parties according to its true spirit and intent, but to make a contract for them which they never contemplated.

But, not content with this, which is believed to be a full answer to the complainant's relief in this case, we show affirmatively that he has actually sustained no loss or injury, and can never sustain any. This is recognised in Champion *v.* Brown, page 409; as a sufficient answer to any relief under the bond of indemnity, in equity.

The remedy sought in this action, then, amounts to nothing more than a proceeding to compel the defendants to pay the debts to the creditors of the firm; and certainly there is nothing in the bond to warrant such a proceeding. The creditors of the firm have their remedy at law, and from the present situation of complainant's estate they can never exercise it to his damage, loss or injury.

The other English authorities cited by complainant's counsel are founded on the same principles and susceptible of the same answer given above to the case in 1 Vernon. And it is worthy of observation, that in all the cases relied on, there was some substantial benefit derived by the covenantor from the contract. But in the

present case, no benefit was derived by the defendant Denson, except perhaps some security for a heavy liability which he had incurred by the bad faith of the complainant and for his benefit.

THE CHANCELLOR.

The complainant was a member of a mercantile concern, composed of himself, Calvin Hansborough and Jesse Denson, and upon retiring therefrom took from the other partners a bond with sureties, conditioned to save him harmless, and to indemnify him against "all loss and injury, damages, costs and charges," that might be incurred by him by reason of his liability on certain enumerated outstanding debts against the firm. He states that the obligors in said bond have not kept and performed the condition thereof, but have failed to pay one of the claims which had matured against the firm, and that a suit had been instituted thereon against him, in the Madison circuit court, and charges that they have made no preparation to pay other claims against said firm as they may become due; that he will consequently be subjected to suits upon them also, and be thus irretrievably ruined. He prays that the defendants may be compelled to execute specifically their covenant and obligation to save him harmless and indemnify him against his liability on account of the debts of said firm.

The answer of the defendants states, in substance, that they are laboring in good faith to pay off all the debts of the firm; that considerable payments have already been made, and that they have placed nearly all the effects of the late firm, amounting to double the debts due from them, in the hands of a trustee, to be applied in payment and satisfaction of said debts. The answer exhibits a certified record from the circuit court of Madison county, showing that the suit at law against the complainant has been dismissed.

The defendants further insist in their answer, by way of demurrer, that the complainant does not make such a case, by his bill, as entitles him to any relief in this court. Upon this state of the pleadings, the cause is submitted for final hearing. Whether the complainant is entitled to any relief must depend upon the construction to be given to the contract which is set out in his

bill. The liability of the defendants to the complainant, in regard to the debts of the partnership, arises exclusively out of that contract. The bond, therefore, which created, must determine the extent of their liability. Courts of equity do not profess to extend or alter the terms of a contract, or to apply different rules of interpretation from those which obtain at law. They can decree nothing more than that to which a party has entitled himself by the terms of his contract. Looking to the language of the bond, I am unable to place any interpretation upon it which entitles the complainant to any remedy, either at law or in equity, until the contingency has arisen upon which his right of action was to accrue—until, according to *its* terms, he has sustained some injury, incurred some loss, or suffered some damage, or been damnified by the payment of costs and charges resulting from the failure of the defendants to pay off or discharge the debts therein enumerated. The undertaking of the defendants was not to indemnify the complainant against prospective or anticipated liability. He was already liable, *in solido*, with them, for the payment of the debts of the firm; but the engagement was to protect him against any injury or damage he might sustain by reason of that liability.

A covenant to *indemnify* against a debt, is not necessarily a covenant to *pay* that debt. The terms of the bond do not require that the defendants shall, at all events, pay the debts of the firm, but that they shall *guard* the complainant against such payment. This may be done in other modes than actual payment. The defendants may take up and cancel the original evidence of debt by which the complainant is bound, and substitute new and distinct liabilities; or they may interpose some legal ground of defence to a suit by the creditors and defeat a recovery. In both these instances the condition of the bond would be fully complied with, and the complainant have realized the whole object of the contract.

It is not alleged or even pretended that the complainant has yet sustained any damage or suffered any loss on account of the alleged default of the defendants. On the contrary, it is shown that some of the debts provided against were not even due at the time of filing his bill. To this extent the court is asked to anti-

cipate default in the defendants, and require precautionary payment, to meet a conjectured breach of their bond, and thus substitute a deposite of money, as a security to the complainant, instead of the personal obligation of the defendants, which is all they contracted to give. This would be going beyond any jurisdiction which has been exercised upon bills of *quia timet*. I regard the bond as a covenant for the mere indemnity of the complainant, and not as an undertaking absolutely for the payment of the debts of the partnership.

The case of Douglass *v.* Clark, 14 John. R. 177, is every way analogous to the one before me. The court there sustained a plea of *non damnificatus* to an action on a bond like the present, and recognized the distinction between a covenant to indemnify against a debt and an agreement to pay that debt.

The same distinction is sustained in the case of Chase *v.* Hinman, 8 Wend. R. 456, where the court say, "there is no doubt as to the general proposition that, in order to recover upon a mere bond of indemnity, actual damage must be shown. If the indemnity be against the payment of money, the plaintiff must, in general, prove actual payment, or that which the law considers equivalent to actual payment. A mere legal liability to pay is not, in such case, sufficient." The court, in that case, admit that if the indemnity was against a liability to pay, the rule would be different.

The case of Donely *v.* Rockfeller, 4 Cow. R. 253, is an authority to the same effect. I think it is obvious, in the case before me, that the plaintiff has not shown such a case as would entitle him to an action at law upon the bond, and that it is equally clear that he can have no relief in this court. The rule which requires a plaintiff to show a present subsisting right of action, is equally regarded in equity as at law. A court of equity will supply a remedy where none exists at law, but does not profess to create a right of action where the law gives none.

The complainant has no right, either legal or equitable, to call the defendants to account, until he has been damnified by their failure to hold him harmless against the debts of the firm. But if there had been a breach of the bond, I should much question the power of this court to give the complainant any relief touch-

ing it.   It is a general rule that a court of equity will not decree a specific performance of a mere personal covenant sounding in damages, nor of a contract relating to personalty, where compensation may be had at law.   11 Conn. R. 121; 5 John. Ch. R. 195. Such contracts will only be enforced where the property has some artificial nature, or where a breach of the personal undertaking would be productive of irreparable injury.   Jeremy's Eq. 424; 1 Jac. & W. 370.

Several cases have been referred to by the counsel for the complainant, in the early books of report, which go to sustain the jurisdiction of a court of equity, to decree performance of a general covenant of indemnity, though it sound only in damages. The cases of Randolph *v.* Hayes, 1 Vernon 189, and Lee *v.* Rook, Mosely's Rep. 318, are authorities for that position.   In the first case, the Lord Keeper is reported to have given as a reason for his decree, that the *quantum* of damages could only be fixed by an examination of complex and intricate accounts relating to the revenue of Ireland, which could not be made before a jury on a trial at law.   The want of an adequate remedy at law, would therefore seem to be the reason which influenced the court in that case.   I find no late case in the English books, in which the cases referred to have been recognized as authority.   On the contrary, their authority seems to be questioned, if not denied, in the case of Antrobus *v.* Davidson, 3 Merival 596, where the court expressly refused to entertain a bill for the specific performance of a bond of indemnity.   The cases of Ranelagh *v.* Hays, and Lee *v.* Rook, were referred to in support of the bill; but Sir William Grant said the *dicta* in the cases cited furnished no authority for the demand made in that case.   It is true, that the case of Ranelagh *v.* Hays seems to be cited with approbation by Chancellor Kent in the case of Champion *et al v.* Brown & Brown, 6 John. Ch. Rep. 398; but the engagement of the defendants in the last mentioned case was something more than a mere covenant of indemnity.   The case was this:   John Paddock, by written agreement, purchased a tract of land from Champion & Storrs, to be paid for in six annual instalments, and died, leaving the purchase incomplete.   His administrators, finding themselves unable to make the payments, assigned the contract of Champion & Storrs to Brown & Brown,

taking from them a written agreement to take up and cancel the contract with Champion & Storrs, or to indemnify the administrators against it. Here then was an agreement relating to real property, by which the defendants in that case assumed affirmatively to pay off the debt due from Paddock for the land. And this is the light in which Chancellor Kent viewed it, when he declared the good sense and meaning of the covenant was, that the defendants in that case "intended to stand in the place of Paddock, and to assume the payments to Champion & Storrs with which his estate stood charged." In that case fraud was charged upon the defendants, which the chancellor said was alone sufficient to give jurisdiction and sustain the bill.

All the cases which were cited by the complainant's counsel, which are supposed to sustain the complainant's bill, are said to proceed upon the doctrine by which courts are governed on bills *quia timet*. They are expressly assimilated to the right of a surety to come into equity to compel his principal to discharge him from his liability. If their authority depends upon the assumed analogy to the law governing the relation of principal and surety, their application to the case before me may still be well doubted. The relation between the parties to a bond of indemnity is in no equitable sense analogous to that of principal and surety. The right of a surety to call for precautionary payment, by his principal, does not arise from any contract between them, but rests exclusively upon the doctrine and principles of a court of equity; whereas the rights of parties to a bond of indemnity arise from a definite, legal obligation, created by express contract, having no dependence upon abstract principles of equity. In this case the complainant makes no claim upon the defendants to pay the debts of the firm, except through the bond of indemnity. He shows no separate equity against them; on the contrary, so far as the creditors of the partnership are concerned, his obligation to pay them is both equitably and legally as great as that of the defendants. To shield him against ultimate loss and injury on account of that liability, is the scope and purpose of his bond of indemnity.

Upon an ordinary obligation to pay money, the surety has an undoubted right to compel his principal to relieve him; but it is otherwise in the case of a bond of indemnity, the legal effect of

which is to protect against the consequences of future default, but not to entitle the party to call for payment in advance, by way of preventing the risk of his being thereafter damnified. See Antrobus *v.* Davidson, 3 Merival 578. To sustain such a case would be to destroy the very nature of the contract itself. If a party holding a bond for mere indemnity, may, at his option, convert it into a present obligation to pay money, before the contingency has happened against which it was given as security, written contracts would be a useless ceremony, so far as they seek to limit and define the extent of the obligation intended to be incurred. I do not intend to affirm that a case could not arise under a bond of indemnity which would be proper for specific performance. Where a party covenants affirmatively to do a particular act by way of indemnity to another, although the covenant may sound in damages, yet if a breach of it would be productive of injury, irreparable at law, equity should decree its performance. The case before me is not one of that kind. There is here no affirmative covenant to pay the debts mentioned in the bond; and any breach of the covenant it contains may be readily measured and compensated at law. It is sufficient that the defendants' contract shows no agreement to do that which the complainant asks me to compel them to perform.

I am accordingly of opinion, that the complainant's bill be dismissed, but without prejudice to any rights he may have at law.