Williams, J.
There appears to have been, at the trial, but one substantial controversy of fact, which was, whether Mr. Dawson, the superintendent of the defendant’s store, had authority to, and did, enter into the agreement set forth in the petition, in behalf of the defendant. The jury’s determination of that controversy adversely to the defendant, though justified by the evidence, is not necessarily decisive of the case, which, as presented here, is reduced to an inquiry into the nature and effect of the agreement so made. The answer admits that the plaintiff, in an action brought by it against Belford, Clarke & Co., levied an attachment on personal property of that company then in the possession of the defendant here, of sufficient value to satisfy the demand which the plaintiff was there seeking to collect; and that, in the due prosecution of .that action the plaintiff recovered judgment for the amount alleged in its petition in this case. It is also admitted that, while the attachment was a subsisting lien on the property it was replevined from the officer at the suit of the Book and Stationery Department Supply Company; and that, the plaintiff here, who was made a defendant in that suit, recovered against the plaintiff therein, a judgment for damages for the wrongful replevin of the property, in an amount equal to the judgment recovered in the attachment case. The evidence shows that, upon the replevin of the property, it was placed by the plaintiff in that suit, in the store of the defendant in this case, for sale on commission by the latter as agent of the former who, in order to obtain sureties on the replevin bond, submitted to Mr. Dawson, then the superintendent of the defendant’s store, the following written proposal:
*249 “Jas. W. Dawson, Esq., Cincinnati, O.
“Dear Sir: We hereby authorize you to hold of the stock and mdse, now in the Book & Stat’y Dept, of the John Shillito Company so much in amount as will be necessary to guarantee George B. Fox or whosoever he may have sign bond, against any loss by being a party to, the bond given or to be given in a replevin suit of this company vs. The Henderson-Achert Co., and to hold such stock and mdse, until such time as said Geo. B. Fox may notify you in writing that he does not desire any further guarantee.
“Yours truly,
“Book & Stationery Dept. Supply Co.
“C. Higgins, Pres’t.”
This proposal was accepted, and in pursuance thereof, George B. Fox and another person became sureties on the bond, which was conditioned tha't the plaintiff in the replevin suit would duly prosecute the same, and pay all costs and damages that should be awarded against it. It was admitted on the trial that the sureties on the replevin bond, and the plaintiff in that suit were, and are, all insolvent; and, that the defendant in this action did not, at the time of its commencement, nor since, have either property or money belonging to the plaintiff in replevin, all having been paid or turned over to the latter, or according to its direction, without the consent of the sureties on the bond.
The , defendant’s contract of indemnity so entered into, no doubt inured to the benefit of the sureties who, upon the faith of it, incurred their obligation on the replevin bond, as fully as if made directly with them. And it is the contention of counsel for the plaintiff that, when its action was commenced, it was the right of *250 the sureties to enforce performance of that contract by compelling the defendant to discharge their obligation on the bond, and, as that required the satisfaction of the judgment recovered in the replevin suit, the plaintiff is entitled to the same remedy through the process of subrogation, as here sought.
When not otherwise controlled- by express agreement, there is an implied stipulation in the usual unconditional contract of suretyship, that the principal will pay the debt at-maturity, and thus protect the surety by relieving him from the burden of his obligatipn; and, upon failure to do so, the latter had the right in equity, and now has by statute, to compel payment of the debt out of the principal’s estate, though the surety made no payment before the commencement of his suit. Stump v. Rogers, 1 Ohio, 533. Section 5845, Revised Statutes. The creditor is undoubtedly entitled to subject to the payment of a judgment recovered on the debt, any securities placed by the principal in the hands of the surety for its payment, or for his indemnity against its payment. If the securities consists of tangible property that can be reached by execution, process of that nature is the appropriate remedy for their subjection to the satisfaction of the judgment; for the property, though in the hands of the surety, being the propery of the principal debtor, is subject to seizure and sale like other property belonging to him, and its application to the payment of the debt and the consequent discharge of the surety’s liability, is in accomplishment of the purpose for which it was placed in his custody. Where the securities are choses in action, counter bonds, or taortgages given by the principal, for the collection of which, and their application to the debt, *251 an action becomes necessary, the surety may resort to that remedy; and the creditor may oftentimes reach property of that nature in the possession of the surety, without the aid of subrogation, through a creditor’s bill, or proceedings in aid of execution. But as the money arising from such securities, however reached, properly belongs to the creditor for the security of whose debt they were intended, equity will aid him through subrogation to the remedies of the surety, which may prove the more effectual, because the creditor in that way becomes entitled to whatever priority of right exists in favor of the surety. This doctrine is sometimes said to rest upon the principle that a trust for the benefit of the creditor attaches to the property eo instanti it is placed in the possession of the surety, the execution of which may be enforced at the suit of the creditor, the cestui que trust. This was held in Pendery v. Allen, 50 Ohio St., 121, and has been in many cases, some of which are cited in the brief of counsel for the plaintiff. In other cases the doctrine is said to arise from that principle of natural equity which requires that his property, in whatever form it may be, who is ultimately liable for the payment of the debt, should be primarily applied to . that purpose, in exoneration of the one who is only secondarily liable. Either view presupposes that the securities are placed with the surety, and are -the property of the principal debtor. The doctrine has been applied, however, where a stranger to the debt, for a sufficient consideration, has agreed to assume and discharge the obligation of the surety. The creditor may adopt and enforce the promise, for it is the property of his debtor, and its performance includes the payment of the debt. Such being its purpose, a court *252 of chancery will see that its design is fulfilled. Champion v. Brown, 6 Johns. Ch., 406.
A distinction has been made between cases of that kind, and those where the agreement is personal to the surety, for his individual indemnity only, and not for the discharge of his liability; courts in cases of the latter class holding that the creditor acquires no equity to enforce the covenant. Homer v. Bank, 7 Conn., 478; Taylor v. Bank, 87 Ky., 398; Bank v. Hastings, 1 Doug. (Mich.), 225; Jones v. Bank, 29 Conn., 25. There are many other authorities to the same point, some of which are cited in the brief for the defendant. An attempt to define the precise scope of this distinction is a task that need not be assumed here further than to remark that it must depend, in each case, upon the terlns and conditions of the covenant or contract of indemnity. For, while the right of subrogation is not founded on contract, it is well settled that it may be qualified and controlled by express agreement of the parties; and, in that respect, their rights and obligations may be whatever, by their contract, they choose to make them. Contracts of that nature, like all others, are to be construed and enforced according to the intention of the parties, as derived from the language they have employed.
The contract between the defendant in this action and the plaintiff in the replevin suit, was made by the former’s acceptance of the latter’s written proposal hereinbefore quoted; and that instrument fixes definitely and conclusively the terms and extent of the defendant’s obligation of indemnity to the sureties on the replevin bond. That obligation as there expressed, is “to guarantee” the sureties “against any loss by being a party to *253 the bond,” and to hold the property then in custody of the defendant for that purpose, until such time as the sureties should give notice that they did “not desire any further guarantee.” The apparent design of this last clause of the agreement was to provide the defendant with the means of fulfilling its obligation of indemnity. At all events, it does not enlarge nor diminish that obligation, which is to protect the sureties on the replevin bond against loss to them from their suretyship; for, until such loss should occur it is entirely immaterial to them whether the property continue in the possession of the defendant or not, and it is not material then, since the defendant is, in either event, bound to make good the loss. The nature and extent of the defendant’s obligation to the sureties, was, therefore, unaffected by the surrender of the property, and of the money arising from the sales made, to the owner. If the property or its proceeds had remained in the possession of the defendant when the plaintiff recovered the judgment in the replevin suit, either could, undoubtedly, have been subjected to its payment by legal process or proceedings. But that would have been, not through, nor by virtue of any rights of the sureties, but by independent remedies belonging to the plaintiff as a creditor.
The plaintiff had no contract with the judgment debtor, nor with the defendant here, that the property placed in the possession of the latter should be held for the payment or security of the debt; nor, did the latter bind itself to any one to hold the property for such purpose. The defendant is a stranger to the debt, and its agreement is one strictly of indemnity to the sureties ; so that, its individual liability on the agreement, to enforce which this action was brought, *254 is in no sense a property right of the plaintiff’s debtor, and satisfaction of the judgment obtained therefrom would not be payment out of, the debtor’s estate, but out of the estate of a stranger. Confessedly, therefore, the liability of the defendant on its covenant to indemnify the sureties against loss, can be reached by the creditor, if at all, only through some right or remedy that belongs to the sureties. And it should be borne in mind that the defendant’s obligation does not arise out of any principle of equity, but is created by special agreement of the parties. Except for its express agreement the defendant would have nothing to do with the liability of the sureties. That agreement, therefore, which alone created, must determine the extent of the defendant’s liability, both at law and equity; for there is no principle upon which a court of equity, or law, can enlarge the legal effect of the agreement. It seems self-evident that the rights of the creditor through subrogation to the remedies of the sureties can, in no case, exceed those of the latter, and that, until the indemnitor’s covenant has been broken, or there has been some failure to perform it, no action can be maintained thereon by either. This was declared in Ohio Life, etc., Co. v. Reeder, 18 Ohio, 35, 47, and there is no diversity of authority on that subject.
There is an essential difference, in legal effect, between covenants of indemnity, strictly, that is, of indemnity against loss, and covenants to pay, or assume, or stand for, the debt, or a surety’s liability thereon. A right of action accrues on those of the latter class as soon as the debt matures and is unpaid, because the liability then becomes absolute, and the ■failure to pay is a breach of. the express terms of the *255 covenant. While those of the former class are not broken, and no right of action accrues, until the indemnitee has suffered a loss against which the covenant runs. This distinction grows out of the. express terms of the contract, and is well established by authority. It is expressed by Mr. Justice Swayne, in Wicker v. Hoppock, 73 U. S. (6 Wall.), 94-99, as follows : “In that class of cases (contracts of indemnity) the obligee cannot recover until he is actually damnified, and he can recover only to the extent of the injury he has sustained up to the time of the institution of the suit. But there is a well settled distinction between an agreement to indemnify, and an agreement to pay. In the latter case a recovery may be had as soon as there is a breach of the contract, and the measure of damages is the full amount agreed to be paid.” That the distinction obtains at law, counsel concede. But, it is insisted that a different rule prevails in equity, which, it is claimed, will entertain a suit for the specific performance of indemnifying covenants before a loss has been sustained, by compelling the payment or discharge of the surety’s obligation, for his better and more complete exoneration. There is both reason and authority to sustain the proposition that a covenant, though by a stranger, founded upon a sufficient consideration, to pay, or to assume, or to stand for a debt on which a surety is,bound, may be specifically enforced in chancery, after the maturity of the debt, if it be not then paid by the covenantor. The reason is, as has already been stated, that by his failure to pay he has failed to perform his covenant, and the remedy is within its express terms. The courts have many times so held. But on no sound principle can a court of chancery, any more than a court of law, compel an indemnitor to perform *256 his covenant in advance of the happening of the contingency or event upon which, by its terms, it is to be performed. Such a remedy would necessarily involve, not the enforcement of the contract made by the party, but its modification by» the court, and its enforcement in that modified form.
It would not be profitable to enter upon an extended examination of the authorities touching this point. They have been reviewed in Hoy v. Hansborough, 1 Freem. Ch. (Miss.), 533; Bank v. Hastings, 1 Doug. (Mich.), 224-256, et seq., and more recently in the case of Central Trust Co. v. Louisville Trust Co., 100 Fed. Rep., 545, in each of which cases the existence of a remedy like that demanded in this case, on covenants of the same nature, was denied. In the last case above cited, the general character of the contract of indemnity, and of the relief sought, but refused, were practically the same as in the case here under consideration; and, in the opinion of the court it is said of the other two cases, which are there cited, that: “The covenants upon which the indemnitors were sued in each of the cases cited were simple covenants ‘to save harmless and indemnify’ against loss and damage, and were substantially identical with the covenant upon which this action was brought. In neither had any loss been actually sustained. A mere possible legal liability to pay was in both cases held to be insufficient to satisfy the terms of the bond, and in each case relief was denied upon the ground that the contingency provided by the bond had not arisen. The opinions are well reasoned, and most of the authorities now relied upon by counsel for complainant were considered and distinguished.”
*257 So, in the case before us, the defendant’s covenant for the benefit of the securities on the replevin undertaking is one strictly of indemnity against loss on account of their suretyship, and nothing more; and, as they have yet suffered no loss, no right of action has accrued to them thereon, either at law or in equity, and consequently none exists in behalf of the plaintiff,

Judgment affirmed.

Burket, Shauck and Davis, JJ., concur.
Minshall, C. J., dissents.