### HOMER and others *against* THE SAVINGS BANK OF NEW-HAVEN and others.

Where collateral security is given, or property assigned, for the better protection or payment of a debt, chancery will make it effectual for that purpose, not only to the immediate party to the security, but to others who are entitled to the debt.

But where the *Eagle Bank,* shortly after its failure, assigned property to trustees, to secure, indemnify and protect *H.* against any indorsment of his on the post-notes of the *Eagle Bank,* to an amount not exceeding 20,000 dollars ; and it appeared, that at the time of the assignment, there were outstanding post-notes of the *Eagle Bank,* indorsed by *H.,* to the amount of more than 100,000 dollars ; that *H.* was indebted to the *Eagle Bank* in more than 500,000 dollars, and was insolvent ; and that he had paid nothing on his indorsements of post-notes ; on a bill in chancery brought by holders of such post-notes to the amount of 69,000 dollars, for the benefit

of the property so assigned, it was held, that the trust was not created for the payment of *Eagle Bank* post-notes, but for the mere indemnity of *H.;* that *H.* could have no claim to this fund but on the ground of payments actually made upon his indorsements ; that the plaintiffs could claim the benefits of the trust only through *H.*, and claiming through him, must stand in his place and be subject to the same equity to which he would be subjected, were he claiming the execution of the trust ; and consequently, that the plaintiffs were not entitled to the relief sought.

*New-Haven,*
*July, 1829.*

Homer
*v.*
Savings Bank.

THIS was a case reserved, by the superior court, sitting in chancery, for the consideration of this Court, on a cross-bill filed by the plaintiffs, against the original bill of the *Savings Bank*, sundry depositors and creditors of the *Eagle Bank* and the *Eagle Bank* ; which was tried before *Bissell*, J., at an adjourned term of the superior court, at *New-Haven*, in *June*, 1829.

On the 19th of *September*, 1825, *William C. Holly* and *Normand Dexter*, being largely indebted to the *Eagle Bank*, made an assignment of 3500 tons of iron to *George Hoadly*, the president of the bank, in part payment of their debt. On the 21st of the same month, *Hoadly* assigned the same iron to *William W. Woolsey* and *George Griswold*, in trust, that after having sold it and converted it into money, and having paid and reimbursed the charges and costs incident to the trust, they should, in the first place, by and with the proceeds, or any moneys to be procured therewith, secure, indemnify and protect *William C. Holly* against and concerning any indorsements of his on the post-notes of the *Eagle Bank*, to an amount not exceeding 20,000 dollars ; and in the second place, pay the creditors of the *Eagle Bank*, in the order and according to the priority following, *viz.* 1st, to pay to the *Savings Bank* the full amount of all moneys, deposited by that institution, in the *Eagle Bank*, supposed to be about 90,000 dollars ; 2dly, to pay all other persons, who had ordinary or special deposites of money in the *Eagle Bank*, the full amount of such deposites respectively ; or if the said proceeds should prove insufficient to pay such depositors in full, then to distribute the proceeds among them according to the amounts of their respective deposites ; and 3dly, to pay and distribute whatever balance might remain of said proceeds, among the remaining creditors of the *Eagle Bank*, *pari passu*, according to the amounts of their respective just claims. *Woolsey* and *Griswold* accepted the trust ; and such proceedings were had, that the sum of 56,182 dollars, and 95 cents, proceeds of the iron so assigned, was paid into court to the credit of the cause.

To obtain that part of this fund in which *Holly* is supposed to have an interest, was the object of the present bill.

The plaintiffs stated, that they were the owners of all the *Eagle Bank* post-notes indorsed by *William C. Holly*, which were then out-standing and unpaid ; that they were the persons for whose use and benefit said sum of 20,000 dollars was provided for the payment of post-notes, and were beneficially interested in that sum ; and that *Holly* had no other interest therein than to have it applied on the post-notes indorsed by him, which he is liable, but wholly unable, to pay.

The court found, that the plaintiffs were the holders and owners of the post-notes of the *Eagle Bank*, to the amount of 69,000 dollars, indorsed by *Dexter* and *Holly* ; that when these notes came to maturity, they were presented for payment at the *Eagle Bank*, were regularly protested, and due notice of non-payment was given to the indorsers ; and that the *Eagle Bank, Dexter* and *Holly* have failed and become insolvent. The court also found, that other post-notes of the *Eagle Bank*, indorsed by *William C. Holly*, to the amount of 32,980 dollars, were outstanding, at the time of the failure of the bank, which were subsequently received by the agents of the bank, and are now in their hands : but in relation to the greater part of these, there was no proof of demand or notice. The court further found, that on the 19th of *September*, 1825, the date of said assignment, *Holly* was indebted to the *Eagle Bank* in the sum of more than 500,000 dollars, which debt is still due and unpaid ; that at the time of the assignment, *Holly* represented, that of the 3500 tons of iron, assigned, by him and *Dexter*, to *Hoadly*, for the *Eagle Bank*, 2700 tons were in the town of *Stamford* ; and that he and *Dexter* had more than 3000 tons of iron in the city of *New-York*, free from any lien or pledge, and from which the remaining 800 tons assigned could and would be received ; that the representations so made by *Holly* were false, and known by him to be so ; that the trustees obtained all the iron at *Stamford*, which was in fact owned by *Holly*, and this, together with what they were able to obtain in the city of *New York*, amounted to 890 tons only : the difference in value between the 3500 tons assigned and what the trustees in fact received under the assignment, being 240,000 dollars.   The court also found, that *Holly* had become liable to the *Eagle Bank*, since its failure, by obtaining possession of its notes, without its consent, to the amount of 52,000 dollars ;

and it did not appear, that he had ever paid any thing on his indorsements of the post-notes of the *Eagle Bank*.

*Staples* and *G. C. Goddard,* for the plaintiffs, after premising, that the iron, at the date of the assignment, was the property of the *Eagle Bank,* and that institution had a right to assign it in trust for the payment of the creditors therein named ; that the *Eagle Bank,* by such assignment, directed a certain portion of the avails of this iron to be applied, in the first place, to secure, indemnify and protect *Holly* against his indorsements of the post-notes of the *Eagle Bank* to an amount not exceeding 20,000 dollars ; and that, by this conveyance, the holders of the *Eagle Bank* post-notes indorsed by *Holly,* became interested in the fund, and the assignees became their trustees, and they the *cestuy que trusts,* contended, That a creditor may demand the fund provided for the secuty of the indorser or surety, either in his hands, or in the hands of a trustee, and require that it shall be paid directly to him ; and a court of equity will enforce the demand. *Maure* v. *Harrison,* 1 *Eq. Ca. Abr.* 93. *Moses* & al. v. *Murgatroyd* & al. 1 *Johns. Chan. Rep.* 119. 131. *Russell* v. *Clark's* exrs. & al. 7 *Cranch* 69. *The United States* v. *Sturges* & al. 1 *Paine's C. C. Rep.* 525. *Phillips* v. *Thompson,* 2 *Johns. Chan. Rep.* 418. 422. *Kip* v. *The Bank of New-York,* 10 *Johns. Rep.* 63. 65. *Miller* & al. v. *Ord,* 2 *Binn.* 382. *Mayhew* v. *Cuckold,* 2 *Swans.* 200. 1 *Madd. Prac.* 235. *Hayes* v. *Ward,* 4 *Johns. Chan. Rep.* 129. *Parsons* & al. v. *Briddock* & al. 2 *Vern.* 608. Ex parte *Rushforth,* 10 *Ves.* jun. 422. Ex parte *Crisp,* 1 *Atk.* 135. *Wright* v. *Morley,* 11 *Ves.* jun. 12. 22. *Glossop* v. *Harrison* & al. *Coop. Rep.* 61. These authorities shew, that the security follows the debt ; and that equity will give to the creditor the benefit of all securities made to the surety of the debtor, to protect that surety against the debt. The security is a trust ; and in equity, the avails of it will be applied to the use of the person beneficially interested ; because it is just, and to avoid circuity of action. Instead of requiring *Holly* to sue the trustees, and the plaintiffs to sue *Holly,* equity will give the money at once to the plaintiffs. It fulfils the intention of the assignment in the shortest and best manner. That the *cestuy que trusts,* in this case, were *ignorant* of the provision in their favour, at the time it was made, is no objection to their having the benefit of it

*New-Haven,* now.   They may affirm the trusts whenever it comes to their
July, 1829. knowledge.   *Neilson* v. *Blight,* 1 *Johns. Ca.* 205.   *Moses* v.

Homer
*v.*
Savings Bank.
*Murgatroyd,* 1 *Johns. Chan. Rep.* 121.

The plaintiffs, then, are entitled to the money, unless they are
debarred, 1st, by the fraudulent representations of *Holly;*
2ndly, by his indebtedness to the *Eagle Bank;* or 3rdly, by
his having taken 52,000 dollars of *Eagle Bank* post-notes since
the assignment.

First, the representations made by *Holly,* cannot prejudice
the rights of the post-note holders any more than the other
*cestuy que trusts.* If *Holly's* fraud in conveying to the bank,
or its agents, can be visited upon these preferred creditors be-
yond what the iron falls short of paying them, it must equally
affect them all, and defeat the whole assignment. If the as-
signment stands good, it must avail according to the terms of
it ; for it is the law between the parties. Because the bank
did not obtain as much as they had a right to expect, under the
conveyance to them, is no reason why the trustees should not
apply the avails of what they have received according to the
terms of the contract, as far as they will go. Further, the
representations were merely *idle.* The assignment on the
part of *Holly,* was voluntary. He received no discharge for
it. It was immaterial to him, whether the 20,000 dollars went
to pay post-notes, or to diminish his liability to the bank.

Secondly, *Holly's* being largely indebted to the *Eagle Bank*
and insolvent, is no reason why the holders of the post-notes
should not be paid according to the terms of the assignment.

Thirdly, if *Holly,* after the failure of the *Eagle Bank,* took
52,000 dollars of its notes, without its consent, either fraudu-
lently or forcibly, it is not perceived how this can affect the
rights of the trustees, or the *cestuy que trusts,* under this assign-
ment. If *Holly,* by fraud or force, could defeat this assign-
ment made between the bank and its creditors, he must have
the power of doing great injustice, where, it would seem, the
law cannot restrain him.

*N. Smith* and *Hitchcock,* for the defendants, after remark-
ing, that the plaintiffs claim title to this fund through *Holly,* and
can have no higher equity than he has, as a court of equity
never creates any new rights, but at most it only transfers
existing rights,—contended, 1. That *Holly* could have no claim
on this fund, if he were solvent and not indebted to the *Eagle*

*Bank,* until he had *paid* the post-notes which he had indorsed. The assignment was made to *indemnify* him. It is a condition precedent that he should be *damnified*, before he can call for an indemnity from the fund in question. Mere liability is not sufficient. *Shepard* v. *Shepard* & al. 6 *Conn. Rep.* 37. *Booth* v. *Starr* & al. 1 *Conn. Rep.* 244.

*New-Haven, July, 1829.*

*Homer v. Savings Bank.*

2. That if *Holly* had paid the whole of these post-notes, he would not be entitled to this fund, because he is already indemnified, by holding the funds of the *Eagle Bank* to ten times the amount. This provision was made in contemplation of *Holly's* being a *creditor* of the bank. It turns out, that his relation to the bank, is of a different character.

3. That the trust is void, because *Holly* obtained this provision in the assignment for his own benefit, by gross fraud, and on a consideration, which has wholly failed.

4. That even if *Holly* is entitled to the benefit of this fund, it is not a conceded point, nor is it clear, that the *plaintiffs* can claim it. In the first place, the finding of the court seems to repel the idea, that the assignment was made for the benefit of the holders of these post-notes. The intention was to favour *Holly,* and not them. Secondly, the general doctrine, which constitutes the foundation of the plaintiffs' claim, is of doubtful authority. It was first broached in *Maure* v. *Harrison,* in 1692 ; and seems to have derived little support from subsequent determinations in *England.* Chancellor *Kent's* remarks in *Moses* v. *Murgatroyd,* 1 *Johns. Chan. Rep.* 129. are founded upon *Maure* v. *Harrison.* So far from its having been recognized in this state, the contrary was expressly decided, in the case of *Clark* & al. v. *Miner* & al., superior court, *New-Haven* county, *January* term 1825, *cor. Chapman, J.*

BISSELL, J. The right of the plaintiffs to have any part of the fund in question applied to their benefit, must depend upon a construction of the assignment, and upon the facts found in the case. Before, however, attending to these, it may be proper, very briefly, to review the authorities relied on, by the plaintiffs, in support of their claim, and to see how far the principle established by those authorities is applicable to the case before us.

In *Maure* v. *Harrison,* 1 *Eq. Ca. Abr.* 93. it was adjudged, that a bond creditor " shall in chancery have the benefit of all the counter bonds or collateral securities, given by the princi-

pal, to the surety ;"—"as if *A.* owes *B.* money, and he and *C.* are bound for it, and *A.* gives *C.* a mortgage or bond to indemnify him, *B.* shall have the benefit of it *to recover his debt.*" In *Russell* v. *Clark's* executors, 7 *Cranch,* 69. 94. 97. the same doctrine was admitted. The court, in that case, declare, that the person, for whose benefit a trust is created, who is ultimately to recover the money, may sustain a suit in equity to have it paid directly to himself. In *Phelps* v. *Thompson,* 2 *Johns. Ch. Rep.* 418. the holder of a promissory note was held entitled to the benefit of a collateral security of the debt, given by the maker to the indorser for his indemnity. And in the case ex parte *Rushworth,* 10 *Ves.* 411. and in *Wright* v. *Morley,* 11 *Ves.* 13. and in numerous other cases, the same general principle is recognized. In *Miller* v. *Ord,* 2 *Binn.* 202. it was distinctly stated, that where the principal assigns a fund to trustees to pay *the debt of a creditor,* and *his surety pays the debt,* he is entitled to the benefit of the fund. In the case of *Moses* v. *Murgatroyd,* 2 *Johns. Chan. Rep.* 219. an assignment was made to secure an indorser, against the payment of certain promissory notes ; and the maker having become insolvent, and the indorser having died, without making payment, it was decided, that the holders of these notes were entitled, in equity, to the benefit of the assignment. In giving his opinion, in that case, Chancellor *Kent* remarks:—"The plaintiffs, as holders of the notes, are entitled to the benefit of this *collateral security,* given by the principal debtor to his surety ; and the case of *Maure* v. *Harrison* is directly to this point. These collateral securities are, *in fact,* trusts executed *for the better protection of the debt ;* and it is the duty of the court to see, that they fulfil the design." In the case of *Kip* v. *The Bank of New-York,* 10 *Johns. Rep.* 65. it was decided, that where an assignment of property was made to secure an indorser against certain notes, indorsed by him, and he had sold and converted the property assigned, into money, and become insolvent, (the notes being unpaid, and the maker also insolvent,) that the money being kept separate from the other property of the bankrupt, did not pass to his assignees,—but that a court of chancery would follow the fund and apply it to the payment of the notes, for the *discharge of which the trust was created.*

The principle to be extracted from these cases, is this—that when collateral security is given, or property assigned, for *the better protection or payment of a debt,* it shall be made effectu-

New-Haven,
July, 1829.

Homer
v.
Savings Bank.

al *for that purpose*,—and that not only to the *immediate party to the security,* but to others, *who are entitled to the debt.* And to make them thus effectual, a court of chancery will lend its aid. And the reason is, *that such is the intent of the transaction.* " They are trusts," says the late Chancellor *Kent,* in the case already cited, " executed *for the better protection of the debt ; and a court of chancery will see, that they fulfil their design."*

Beyond this principle, however, it is believed, no case has gone. No court of chancery, it is believed, has interposed to grant *relief* in any case not falling within this well established principle of equity. Does the case before us fall within this principle ? And can the plaintiffs derive from it any aid whatever ? Was here a debt due from the bank to *William C. Holly,* which it was the object to secure, by this assignment ? So far from this being the fact, the case finds, that he was indebted to the bank to a very large amount. Was it the object of this assignment to make provision for the payment of *Eagle Bank* post-notes, generally, or of such as had been indorsed by *William C. Holly ?* It is impossible to draw that inference either from the language of the instrument, the objects of the assignment, or the facts connected with it and found in the case. What is the language of the deed of assignment, so far as it is applicable to this case ? The trustees are " to *secure, indemnify and protect William C. Holly* against and concerning any indorsments of the said *William C. Holly,* on the post-notes of the said *Eagle Bank,* to an amount not exceeding twenty thousand dollars." It is, I think, very apparent from the language here used, that the benefits of this assignment, so far as regards the post-notes, were intended to be personal to *William C. Holly.* It was to *indemnify, protect,* and *secure* him. This intent could hardly have been more obvious, had the parties expressly provided, that if *Holly* should be subjected on his indorsements, he should be indemnified to a certain amount.

Again ; what were the general objects of this trust ? They doubtless were to give a preference to a certain class of favoured creditors. Was it intended to give the holders of post-notes such preference ? Why should this be done; and what should entitle these creditors to a priority to other bill-holders? Like them they had received these notes, as currency, in the course of circulation ; and who these holders were, the bank

New-Haven,    neither did nor could know.    Besides, this was a numerous
July, 1829.    class of creditors.    It is found, that there were then post-notes
Homer    outstanding to the amount of more than one hundred thousand
v.    dollars, indorsed by *Holly*.    Why should twenty thousand
Savings Bank. dollars have been set apart, for the holders of these notes, without designating to which of them it should go, and without providing that it should be divided *pro rata* among them? And here I should remark, that it is found, that more than thirty thousand dollars in these notes, which were never in the hands of these plaintiffs, were outstanding at the failure of the *Eagle Bank*, and have since been taken in, by the agents.    What superior equity have these plaintiffs over the holders of these notes?    These facts not only furnish strong reasons against the plaintiffs' equity,—but they also go strongly to show, that the benefits of this trust, were intended to be personal to *William C. Holly*.

In further illustration of this remark, suppose that the trustees had paid out this fund to the plaintiffs, and *William C. Holly* should be afterwards subjected to the same amount, on his indorsements on the other post-notes, and should come into chancery for the fund;—would it be any answer for the trustees to say, that they had paid it out, on the other notes, which he had indeed indorsed, but on which he had never been subjected?    And a court of chancery will not, surely, compel the trustees to make a payment, which, if made voluntarily, would afford them no protection.

There are other considerations, which might be successfully urged;—but those which have been suggested, are, it is believed, sufficient to evince, that the trust in question was not created for the payment of *Eagle Bank* post-notes, but for the mere indemnity of *William C. Holly*.    If this conclusion be correct, it is most obvious, that the cases cited and relied upon, are wholly inapplicable.    It as clearly follows, that *Holly* can have no claim to this fund, but on the ground of payments actually made upon his indorsements.    *Shepard* v. *Shepard* & al. 6 *Conn. Rep.* 37.    It also follows, that no third person can claim the benefits of this trust, but through *William C. Holly*, —and claiming through him, must stand in his place, and be subject to the same equity, to which he would be subjected, were he now claiming the execution of this trust.    What that equity is, the facts found in the case, sufficiently disclose.    It cannot be necessary to advert to them.    It is sufficient to ob-

serve, that equity would require of him to pay to the *Eagle Bank* at least half a million of dollars, before the shadow of a claim would exist in his favour.

It has been emphatically asked, What becomes of this sum of twenty thousand dollars, if [the plaintiffs are not entitled to it ? It is not necessary to answer this enquiry, to show that *it does not belong to them.* The enquiry, however, is susceptible of an easy and perfectly satisfactory answer. It sinks into a *residuum.* 2 *Mad. Ch.* 81. *Willes* 293.

I think that the plaintiffs are not entitled to the relief sought by their bill ; and would therefore advise the superior court,that it be dismissed with costs.

HOSMER, Ch. J., was of the same opinion.

PETERS, J., being interested in the event of the suit, and DAGGETT and WILLIAMS, Js. having been of counsel for other claimants under the same assignment, gave no opinion.

Bill to be dismissed.(<i>a</i>)

(*a*) See note to *United Society* v. *Eagle Bank*, ante, 476.