## G. W. OSBORN et al. *v.* SAMUEL NOBLE.

1. SUBROGATION — PRINCIPAL AND SURETY — CREDITOR. — It is well settled that, if a creditor obtains a mortgage or other security from the principal debtor, the surety is entitled to its protection. So, if the surety has obtained indemnity from his principal, the creditor may avail of it, and have satisfaction of his debt out of it.

2. SAME — INDEMNITY AGAINST CONTINGENT LIABILITY. — If the indemnity is against a contingent liability, there can be no substitution until the liability has become absolute.

3. SAME — SAME — DISTINCTION BETWEEN A SECURITY MADE TO THE SURETY TO SECURE THE DEBT, AND ONE TO SAVE HIM HARMLESS FROM A CONTINGENT LIABILITY. — If a mortgage or other security is given to the surety, not to secure the debt or provide a fund for its payment, but to save him harmless from a contingent liability or loss, that contingency must come, and the injury be sustained, before a right to the indemnity inures to the creditor.

4. SAME — SAME — SAME — SECURITY FOR PERSONAL BENEFIT OF SURETY. — Where the contract is for the personal benefit of the surety, in opposition to the idea of a pledge for the debt, or providing means for its payment, the creditor can claim only such rights and remedies as the surety had. If he has not been damnified, and the conditions of the mortgage or other contract of indemnity are unbroken, the surety himself could assert no remedy, nor could the creditor claiming through him, and in his stead, have substitution.

5. SAME — SAME — WHERE THE SECURITY IS FOR THE DEBT, AS WELL AS THE ULTIMATE PROTECTION OF THE SURETY. — Where the security is for the debt, as well as the ultimate protection of the surety, it inures to the creditor; and it is of no moment whether it was given at the time the principal obligation was incurred, or afterward, or whether it was known at the time to the creditor or not. The creditor has an interest in it; becomes a *cestui que trust;* the fund or property at once assumes a trust character, and the surety can do no act which will discharge the trust or release the property from the burden to the prejudice of the creditor.

APPEAL from chancery court of Hinds county, second district. TARBELL, J.

On 12th March, 1869, appellee filed his bill of complaint against appellant, Robert Strong, Mrs. Sarah Castings and Samuel Castings, her husband, as administratrix and administrator, of S. O. Capers, deceased, Mrs. Philip Myers, executrix of Philip Myers, deceased, the personal representatives of James Winters, when known, and John Shelton and Gerard B. Downing, as defendants. The allegations of the bill of complaint are, that on the 27th of February, 1858, appellee "sold and conveyed, by deed duly executed and recorded," to said S. O. Capers, certain lands in said Hinds county, describing the same, "together with twenty-three slaves and farming implements, stock, furniture and provisions, for the sum of $29,620." To secure the payment of which said Capers executed his notes to said Noble, appellee, dated February 25, 1858, with James Winters, Philip Myers and Robert Strong, as joint and several makers and sureties, as follows: One for $3,500 due January 1, 1859; one for $4,000 due January 1, 1860; one for $4,500 due January 1, 1861; four for $5,000, $5,000, $5,120 and $2,500, respectively, due January, 1862, 1863, 1864 and 1865 consecutively. That to induce the said Winters, Myers and Strong to become jointly bound as aforesaid, the said Capers agreed to secure them, or to secure and save them harmless in the liabilities thus incurred by a deed of trust on the property conveyed to him by complainant, S. Noble. That, accordingly, a few days thereafter, to wit, on the 10th day of March, 1858, Capers conveyed said property to the defendants, G. B. Downing and John Shelton, trustees, in trust for the purpose aforesaid, and for the benefit and indemnity of the said Winters, Myers and Strong, by deed of that date, duly recorded. That it was expressed in this deed that "Capers was to retain the use and possession until default made in the payment of the notes aforesaid; and further providing for the sale of the property to re-imburse any one of the said sureties who might pay any of said notes, after the maturity thereof to the payee or holder thereof." That said deed was filed for record on the 10th day of March, 1858,

and recorded on the 22d day of March, 1858, and a transcript of the record thereof is made an exhibit to said bill of complaint.

That, by the execution of said deed of trust, for the purpose aforesaid, a trust was created as well for the complainant as for the said sureties. That on the 22d day of July, 1859, after the maturity of the first of the notes referred to in said deed of trust, and before the maturity or payment of the remainder of the other of said notes, said Capers sold and conveyed said lands to G. W. Osborn.

That at the solicitations of Osborn, and to induce him to purchase said lands, Capers prevailed on Winters, Myers and Strong to enter on the record of the probate court and on the margin of the recorded deed of trust before mentioned the words : " The undersigned hereby release the lands described in this deed of trust from the lien of the same," which words were signed by them and by Downing and Shelton on the same day of the conveyance by Stephen Capers to Osborn. That this release of said deed of trust was made without complainant's knowledge or consent, and the same did not come to his knowledge until a short time before exhibiting his bill of complaint. That Osborn had knowledge as well from this deed of trust as from some of the parties thereto, that the notes for the purchase-money were outstanding and unpaid at the time he purchased said lands from Capers.

That on the 18th of December, 1866, complainant recovered judgment on the last five of the notes of Capers, Winters, Myers and Strong, for $23,392 25, against the executrix of Myers, and against Strong. That Capers and Winters were not sued because each of them was dead and their estates insolvent. Execution issued on this judgment and was returned "no property found." A transcript of this judgment, etc., is made an exhibit to the bill of complaint.

That the personal property embraced in the deed of trust was in part disposed of or consumed by Capers, and the slaves emancipated, etc. That the whole property was never

greater in value than the debt due for it to complainant, and the lands constituted the most substantial and valuable security for this debt.

That the said release, or attempted release, of said lands from the lien created by the deed of trust was wholly inoperative as to complainant, being, as he avers, without his consent or knowledge, and without the payment of the debt it was designed to secure, and that the said deed of trust is still an existing security which complainant is in equity entitled to enforce for the payment of his debt.

That complainant is without remedy at law, and that unless he can be subrogated to the rights of Winters, Myers and Strong in the deed of trust aforesaid, his debt will be entirely lost to him, owing to the insolvency of the parties liable. The prayer of this bill of complaint is to the following effect: That complainant "be sub-stituted to the rights of the said Winters, Myers and Strong as they existed prior to the execution of said pre-tended release, which complainant prays may be set aside or held for nought. That an account, etc., be taken, and a sale decreed of the property in the deed of trust for the payment of complainant's debt," etc.

To this bill there was a demurrer, which was overruled, from which there was an appeal to this court.

*T. J. & F. A. R. Wharton*, for appellants.

*Harris & Withers*, for appellee.

The argument of counsel on both sides are too long for insertion, and it is not possible for the reporter to do justice to them in any attempt to abreviate them, and therefore they are omitted.

SIMRALL, J. :

The complainant filed his bill in chancery, to be substituted to the benefits of a deed in trust, executed by S. O. Capers, to protect and indemnify Winters, Myers and

Strong, who were his sureties on several promissory notes, amounting in the aggregate to $29,620, given to the complainant, Noble, for a plantation and slaves, sold and conveyed by Noble to Capers in 1858.

The complainant grounds his right upon doctrines well established in the courts of equity: "That, if a creditor obtains a mortgage or other security from the principal debtor, the surety is entitled to its protection. So, if the surety has obtained indemnity from his principal, the creditor may avail of it, and have satisfaction of his debt out of it." 1 Story's Eq., § 481. For a statement of the general principle see, also, Bowen v. Hoskins, 45 Miss. 183.

In disposing of this case, it is necessary to look somewhat closely into the principle invoked ; to trace its origin and see upon what considerations it rests; what is its extent and limitation. It is universally conceded by the jurists, that the principle known in our jurisprudence as "substitution," was brought from the civil laws, where it was known as "*cessio actionem.*" As, if the surety pays voluntarily or compulsorily, the creditor must make good to the surety any actions or remedies he has against the principal debtor, also all the accessories thereof, his actions against other sureties and his pledges. If the creditor has put himself in such condition that he cannot assign his securities and remedies against the principal and other sureties, he is barred of his remedy against him upon whom he makes claim. Potier Pan., book 46, § 5. In Hopeland v. Bank of Cumberland, 10 Leigh, 220, it was thought to be wise to recur to the civil law, to derive aid in determining the scope of the doctrine of substitution. There could be no "*cessio actionem*" if there never had been a cause of action and a remedy. Where one is bound for the debt of another and pays it, equity will treat the securities and remedies of the creditor, against the principal debtor, as still subsisting for the benefit of the surety. Some of the cases hold, that the rule only embraces collateral securities, while others have so extended it as not to treat the princi-

pal debt extinguished by the payment, if there were any special advantages incident to it, but consider such payment as operating as an assignment of the debt itself, in order that the surety may avail of the incidental privileges. As if it be a judgment with a lien on property, the judgment will be considered, by an advance of the money, as purchased and equitably assigned, so that the surety may have the priority of the lien, against other creditors.

The rule, that a creditor is equally provided for, when the principal has created an indemnity for his surety, does not arise out of any notion of mutual contract between the parties, but is rather the offspring of natural equity, independent of contract, to prevent the surety, in the first instance, from being harrassed with the debt, and then turn him round to seek redress out of the collateral indemnity.

Where the conveyance is made to or for the security of property not by the terms of the instrument specifically bound to the creditor, the primary intent apparent on the face of the writing is that the property is not pledged to him for the debt. The extent of the burdens, trusts and conditions annexed to a grant, is to be learned by reading the instrument, and gathering from it the intent and purpose. The owner has a right (if he does no fraud, or violates no prohibition of law) to dispose of his property at pleasure. Courts enforce contracts, or give redress for the violation of them, as made by the parties. By construction, they cannot enlarge them beyond their fair intent and meaning, nor, on the other hand, so limit them as to fall short of that. In subrogating, therefore, the creditor to the surety's place, as to any indemnity given him, there can be neither increase nor diminution of rights, as they actually existed in favor of the surety. If, therefore, the indemnity is against a contingent liability, there can be no substitution until the liability has become absolute.   Bank of Virginia v. Boiseau, 12 Leigh, 370; 10 ib. 222.

If a mortgage or other security is given to the surety, not to secure the debt or provide a fund for its payment, but to

save harmless from a contingent liability or loss, that contingency must come, or the injury be sustained before a right to the indemnity inures to the creditor. Where the contract is for the personal benefit of the surety, in opposition to the idea of a pledge for the debt, or providing means for its payment, the creditor can claim only such rights and remedies as the surety had. If he has not been damnified, and the conditions of the mortgage or other contract of indemnity are unbroken, the surety himself could assert no remedy, nor could the creditor claiming through him and in his stead have substitution. Ohio Life Ins. Co. v. Reeder et al., 18 Ohio, 46. If, however, the principal has assigned a fund for the payment of the debt, and the surety pays it, he is entitled to re-imbursement out of the funds. 2 Burr. 202.

An analysis of the cases in this state and elsewhere will, we think, show the distinction we have attempted to enforce though not always adverted to, that where the creditor seeks to appropriate to his debt the collateral indemnity of the surety, it must appear that the security is for the debt as well as the ultimate protection of the surety. If such be its character, it is of no moment whether it was given at the time the principal obligation was incurred or afterward, or whether it was known at the time to the creditor or not. The creditor has an interest in it, and becomes a *cestui que trust*. The fund or property at once takes on a trust character, and the surety can do no act which will discharge the trust or release the property from the burden, to the prejudice of the creditor. Thus in Paris v. Hulet, 26 Vt., the mortgage to the surety was upon the condition that the mortgagor would pay the notes and hold the surety harmless. So in Eastman v. Foster, 8 Metc. (Mass.), and Collin ads. Roberts Colvin, 3 Gratt. 363. In Ohio Life Ins. Co. v. Ledyard, it was said the indemnity was for the better security and protection of the debt. In Moses v. Murgatroye, 1 Johns. Ch., it was said by Chancellor Kent, that it made no difference whether the creditor knew of the securities or not, they were

trusts created for the better protection of the debt, "and the court will see that they fulfill that design." In Homer v. Savings Bank, 7 Conn. 484, after a somewhat patient examination of the books, it was declared by the court that the principle to be extracted from the cases was, that if collateral security is given, or property assigned for the better protection or payment of the debt, it shall be made effective for that purpose, not only to the immediate parties, but to whomsoever is entitled to the debt. It rests upon the intent of the transaction. When created for such an object, the indemnities become trusts, which courts of chancery will carry out, "and see that they fulfill the design."

In Daniel v. Joyner et al., 3 Ired. Eq. 913 (to which reference was made by counsel for appellee), the terms of the trust deed were "to save harmless B" (the surety), "and whenever required by the creditors of A (the grantor), or by any surety who may be threatened with loss by reason of his suretyship, the trustee shall proceed to sell sufficient property to answer the ends of this deed in trust." There the creditors on request to have a sale to pay their debts, and the surety was not obliged to remit until he was injured, it was held, that the trustee need not remit until the surety was actually damnified. The trustee had sold all the property before the suit was brought, and the points of law arose on its distribution among several claimants.

While the language of the courts when speaking to the general proposition has not, perhaps, been quite harmonious, we think the principle has been stated and enforced, that if the security be purely personal, as to indemnify, and save harmless the surety, and not for the better protection of the debt, or intended as a fund for its payment, a trust does not attach to it for the creditor. In such instances no breach occurs until the surety has been damnified, nor is there an action or remedy to which the creditor can be substituted. The general doctrine which we have traced with more or less distinctness elsewhere has, we think, been laid down with emphasis by our predecessors in Dick et al.

v. Maury, 9 Smedes & Marsh. 456.   The terms of the mort-
gage are not given, though it is inferable from the statement
of the case it was to recover the notes.   In Ross v. Wilson,
7 ib. 766, speaking of the character of the security, the
court say: "The conveyance was intended not only to
indemnify Gayle and Doyle against their liability as sure-
ties, but manifestly to secure the payment of the debt."   The
condition was, that "Woods, the mortgagor, would pay the
note to Ross, indorsed by Doyle and Gayle."   "The deed
was to be void on condition that the debt was paid, other-
wise not;" therefore "Gayle and Doyle were by the con-
veyance made trustees for Ross (the creditor), therefore they
could not release or discharge the trust to the prejudice of
Ross."   In Bibb v. Martin, 14 Smedes & Marsh., Hartzogg
and Slater were sureties on an injunction bond.   The con-
dition of the mortgage was, if "Vickers shall well and
truly pay and discharge said bonds, in case by law he shall
be required to pay them, and if at all events he shall save
entirely harmless and free from all costs and damages and
loss on account of said bonds, said Hartzogg and Slater,
then this obligation to be void.   *   *   *   The complainants
were denied substitution to the mortgage, because there had
been no breach of the condition, 'Vickers had not been
required by law to pay the bond.'   The right is governed
by the instrument which created it, and the creditor by sub-
stitution can have no higher right than the surety."   In Bush
v. Stamps, 26 Miss., the condition of the deed in trust was,
that should judgment be at any time rendered on the note
against Shelby, and said Pearson should fail to satisfy the
same, the trustee shall sell, etc.   Here the relief was denied
upon the reasoning in Bibb v. Martin, *supra*, the "rights
being tried by the deed which creates them," there was no
breach of contract, no remedy had accrued to the surety,
for "no judgment had been recovered on the note against
Shelby."   In Carpenter, executrix, v. Bowen, 42 Miss. 28,
the securities protected the debt by authorizing a sale upon
non-payment at maturity.

The decisions in this court have, with more clearness than elsewhere, observed the distinction between a security given to the surety, to save him against loss from being compelled to pay, or doing so voluntarily, and those which, while providing for that, affix to the property a trust for the payment of the debt, in such wise as that it is designed to be also a security for the debt. The instrument itself being referred to discloses its purpose, as embracing the more limited or enlarged sense. The deed in trust recites that Capers is willing and anxious to secure and save harmless his sureties. Therefore, he makes the conveyance upon the condition that, "if the sureties, or either of them, shall pay the notes, or any part thereof, to the payee or holder, then the trustees, at the request of him or them who has paid, shall make sale, and *quoties* as payments shall be made; sale is directed for re-imbursement. It will be observed this indemnity is merely personal, to save harmless from loss, and to re-imburse for actual credits from time to time made upon the debt. There is no breach of this contract until an actual loss has been incurred, nor is authority to sell conferred until there has been an actual advance of money. It is not a pledge or security for the debt to Noble. If there had been no forfeiture as to the sureties and no right to sell, substitution does not place the creditor in a stronger or better position than the sureties had.

We are of opinion, therefore, that the demurrer ought to have been sustained to the bill.

*Judgment here accordingly.*