## John I. Chambers, Receiver, etc., v. Pattie S. Prewitt et al.

1. SUBROGATION—*Principal and Surety—Security for Payment of Debt and Protection of Surety.*—Whether creditors can avail of a mortgage or other security given by a debtor to his surety depends upon the purpose for which it is given. If that be purely personal as only to indemnify the surety, they can not do so until he is actually damnified, or at least has become absolutely liable for the debts; for they must claim through him by subrogation, and until then he himself has no remedy upon it. But if given for the better security of the debts themselves—as for their payment by the principal debtor, or to provide the surety with means to pay them in case of his default—then, although the purpose is also to indemnify the surety to the same extent, a trust attaches to the security for the benefit of the creditors indicated, to which the court will give effect.

2. MORTGAGES—*A Mortgage Construed.*—A and B, his wife, executed a mortgage substantially as follows: "The mortgagors, A and B, his wife, mortgage and warrant to C and D to secure the payment of the following described promissory notes, to wit" (here followed a description of certain notes payable to E). "The following described real estate * * * all of which above described notes have been guaranteed by the said C and D, and when each and all of which shall have been duly paid by said A, together with any other sums for which said C and D or either of them may be liable, either as surety or guarantor of and for the said A, the said C and D shall and will reconvey the above described premises to the said A." *Held*, that the mortgage was a security for the payment of "any other sums for which the said C and D or either of them" might be liable as well as of the notes held by E, and that the proceeds of a foreclosure should be applied pro rata on all unpaid debts of A for which C and D were liable.

3. SAME—*Weight to be Given Condition in Construction of.*—The

purpose of a mortgage is most certainly manifested by the condition on which it is to become void, for its whole and sole purpose is to secure the performance of that condition, and other parts should be considered in connection with it, to assist,. if necessary, in the ascertainment of its meaning.

4. Parol Evidence—*When Admissible to Explain a Written Instrument.*—Parol evidence tending to vary or contradict the plain meaning of a written instrument should not be considered, but so far as it tends to identify a subject-matter referred to in general terms in the instrument, or by showing the situation, condition and mutual relations of the parties to it, makes clear their meaning by the language used, when from the language alone the meaning might be uncertain, it is competent. The court in order the better to understand the instrument in such a case will seek to place itself in the situation of the parties.

5. Res Judicata—*Effect of Decree Against Trustee, on Rights of Cestui Que Trust.*—A executed a mortgage to B and C to secure debts to D, and to others to whom B and C were liable as securities for him. D filed a bill and secured a foreclosure of the mortgage, and at a later date E, F and G filed a bill against him and A, claiming, as others to whom B and C were liable as securities for A. It was contended that the decree in favor of D was a bar to E, F and G, though they were not. parties to the suit because they claimed under B and C who were. *Held*, that they did not so claim, that their right was derived directly from the mortgage, and that B and C were trustees, and as such were powerless,.by any act or default of their own, to release or prejudice the rights of E, F and G.

**Mortgage Foreclosure.**—Appeal from the Circuit Court of Sangamon County; the Hon. James A. Creighton, Judge, presiding. Heard in this court at the May term, 1896. Affirmed. Opinion filed June 16, 1897.

Edward P. Kirby, attorney for appellant.

Patton, Hamilton & Patton, attorneys for appellees.

Parol testimony may be resorted to for the purpose of acertaining the nature and qualities of the subject to which the instrument refers. 1 Greenleaf on Evidence, Sec. 286; Doyle et al. v. Teas et al., 4 Scam. 202; Turpin, Receiver, v. B. O. & C. R. R. Co., 105 Ill. 11; Brand v. Henderson, 107 Ill. 141; Wilson v. Roots, 119 Ill. 379.

When there is any uncertainty respecting the terms of a written agreement and the parties to it have, by their own conduct, placed a construction upon it which is reason-

able, such construction will be adopted by the court. People ex rel. v. Murphy, 119 Ill. 159; Burgess v. Badger, 124 Ill. 288; Home National Bank v. Estate of Waterman, 30 Ill. App. 535.

When a contract fails to designate a payee or beneficiary by name, but describes him as one of a class, parol evidence is admissible to show who was intended.     Railway P. & F. C. M. A. & B. Ass'n v. Loomis, 142 Ill. 560.

Courts, in construing written contracts, endeavor in all cases to place themselves in the position of the contracting parties, so that they may understand the language used in the sense intended by the persons using it.     Wilson v. Roots, *supra;* People v. Murphy, *supra.*

There is no principle more firmly established in our equity jurisprudence than that the rights of one interested in a matter can not be affected by a proceeding in which he is not a party.     Howell v. Foster, 122 Ill. 276; Dorman v. Brereton, 140 Ill. 153; Palmer v. Woods, 149 Ill. 146.

The complainants are entitled to their day in court, which they have not had until now.

The mortgagees are trustees for the holders of all of John P. Smith's paper guaranteed, secured or indorsed by them, upon an equal basis, and one of the holders should not be allowed to obtain an unjust and inequitable advantage of the others through the door of a court of equity.     The doctrine of *res judicata* has no application to this case.     A judgment or decree is no bar as to matters not put in issue. Bently v. O'Bryan, 111 Ill. 60; City of Chicago v. Cameron, 120 Ill. 451; Dulin v. Prince, 29 Ill. App. 209.

There was no issue as to whether these notes were included in the mortgage, in the adjudication in the Wilson case. None was presented by the cross-bill, although the bank had notice of them.     Appellees had no notice of the cross-bill of appellants in the Wilson case, and the mortgagees themselves had no actual notice of it.

In the foreclosure of a deed of trust, the *cestuis que trust* as well as the trustee should be parties to the proceeding. Chicago, etc., v. Peck, 112 Ill. 408.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

In March, 1885, John P. Smith borrowed of George and Hiram Wilson, partners, $22,500, giving his notes therefor and executing a mortgage upon his farm of 770 acres in Sangamon and Morgan counties to secure their payment.

Afterward, he became indebted to the Central Illinois Banking and Savings Association (commonly known as the Central Bank) of Jacksonville, on notes and overdrafts, for the payment of which his brothers, James D. and Lloyd B. Smith, were sureties, and which on February 2, 1893, upon an accounting between the parties, were agreed to amount in all to $34,500. Thereupon, he made his four notes—one for $4,500 at three months, and three for $10,000 each, at six, nine and twelve months, respectively, from that date, with interest at seven per cent., payable to his own order, which he indorsed and delivered to William E. Veitch as cashier of said bank.

In connection with the making and delivery of these notes though at a later date—April 13, 1893—in pursuance of a previous agreement of the parties concerned, James D. and Lloyd B. Smith executed to the bank a separate contract, guaranteeing their payment, and John P. Smith and wife executed to them a second mortgage of his said farm, the material parts of which are as follows:

" The mortgagors, John P. Smith and Anna Smith, his wife, mortgage and warrant to James D. Smith and Lloyd B. Smith, to secure the payment of the following described promissory notes, to wit:" (Here follows a description of the four notes given to the bank as above stated) " the following described real estate," (here follows a description of the lands) "all of which above described notes have by the maker, the said John P. Smith, been duly executed, indorsed and delivered to *bona fide* holders for valuable consideration, and the payment of each and all of which have been guaranteed to the holders thereof by the said James D. Smith and Lloyd B. Smith, and when each and all of which shall have been duly paid by said John P. Smith, together

with any other sums for which said James D. Smith and Lloyd B. Smith or either of them may be liable, either as surety or guarantor of and for the said John P. Smith, the said James D. Smith and Lloyd B. Smith shall and will reconvey the said above described premises to the said John P. Smith or to his heirs or assigns, dated the 13th day of April, A. D. 1893.

(Signed)   J. P. SMITH.   [SEAL.]

ANNA SMITH.   [SEAL.]

This mortgage was delivered by the attorney for the bank, who prepared it and the guaranty contract in the latter part of May, 1893, to the mortgagee James D. Smith at his house in Island Grove, Sangamon county, for his firm and by him given back to the attorney to be deposited in the bank.   Before and when it was delivered the mortgagor was indebted to appellees Pattie S. Prewitt, Annie L. Johnson and Willliam M. Warren, upon his notes held by them respectively, on each of which the mortgagees were sureties; and these notes, together with those given to the bank, constituted the entire amount of his indebtedness.

A bill was filed to the November term, 1893, of the Circuit Court of Sangamon County, to foreclose the Wilson mortgage, to which the mortgagors and the second mortgagees, were made parties defendant and duly served with process.   While that suit was pending, appellant Chambers and Willliam E. Veitch, who had been appointed receivers of the bank, obtained leave to be made defendants also and filed with their answer a cross-bill against the complainant and all of the defendants in the original bill. In the latter, as in their answer, they set up the several transactions above stated between John P. Smith, his brothers named and the bank; that none of the notes of said John P. Smith held by the bank had been paid; that the mortgage to his brothers was given especially to secure their payment and had been redelivered by the mortgagees to the bank for that purpose, and that the receivers hold said notes and mortgage as assets of the bank, with authority to institute suits for their collection; and prayed that

an account be taken of the amount due thereon; that they be subrogated to all the rights of said mortgagees; that John P. Smith be required to pay them the amount found due, and that in default thereof the mortgage be foreclosed, the land sold, the equities of the different parties interested determined, and the proceeds of the sale applied to the payment of said four notes in the order of their maturity.

The original defendants failed to answer either the original or cross-bill, both of which were therefore taken as confessed by them, and on final hearing a decree was entered on December 16, 1893, finding the amount due on the Wilson mortgage to be as claimed, and declaring it a first lien on the mortgaged premises, and on the cross bill that the second mortgage was given for the benefit of the bank, subrogating the receivers to the rights of the mortgagees therein, ascertaining the amount due on the said four notes, and ordering that the premises be sold and the proceeds applied first, to the satisfaction of the Wilson mortgage, and second, to the payment of the amount found due on the four notes held by the receivers in the order of their maturity. The mortgaged premises were not of value sufficient to pay the mortgage debts. They were not sold under the decree, but the receivers obtained from John P. Smith a deed releasing his equity of redemption in consideration of the surrender to him of all the claims of the bank against him.

At the September term, 1894, the appellees herein—James D. Smith, Lloyd B. Smith, Pattie S. Prewitt, Annie L. Johnson and William M. Warren—exhibited in the Circuit Court of Sangamon County their bill in chancery against John P. Smith, Anna Smith, his wife, and the receivers named, setting up the two mortgages, the decree upon the bill and cross-bill in the Wilson case, the conveyance from John P. Smith to the receivers, and their possession of the mortgaged premises, alleging that when the second mortgage was executed the complainants, Prewitt, Johnson and Warren, respectively, were creditors of the mortgagor on his notes, upon which the mortgagees were liable as sure. ties, and under said mortgage were entitled to share pro

rata with the bank in the proceeds of the mortgaged prem-
ises, over and above the amount necessary to satisfy the
Wilson decree, and praying that an account be taken of the
amounts so due them, respectively, and a decree against
John P. Smith for the payment thereof; and that, in default
of such payment, the mortgaged lands be sold, and the sur-
plus proceeds, after the payment of Wilson, be applied pro
rata to the amounts due to the bank and to said other cred-
itors.   The defendant Smith was defaulted, and the bill
taken *pro confesso* against him.   The receivers answered,
contesting the claim of said complainants Prewitt, Johnson
and Warren.   In the meantime, under a stipulation between
the complainants and defendants, part of the lands were
sold by the receivers, and certain notes given for the pur-
chase money placed in the hands of Edward.P. Kirby to
await the final determination of the suit.   The Circuit Court
held that the complainants, Prewitt, Johnson and Warren,
were entitled to share in the surplus proceeds, and directed
Kirby to collect and pay over to them respectively, pro rata.

Veitch having resigned, John J. Chambers was, by order
of the court, permitted to prosecute an appeal as receiver
alone, and accordingly he brings the record here for review.

The contending parties were and are alike creditors of
John P. Smith, for whose claims respectively his brothers,
James D. and Lloyd B. Smith, were also liable as guarantors
or sureties.   In view of this contingent liability, and to
protect them ultimately against loss by reason of it, as far
as he thereby might, he executed to them the mortgage in
question.   The creditors are seeking to reach this security
as a means of satisfying their claims—the receiver, repre-
senting the bank, insisting upon priority, and the others
upon equality pro rata.

It seems to be well settled that whether creditors can so
avail of a mortgage or other security given by a debtor to
his surety depends upon the purpose for which it is given.
If that be purely personal, as only to indemnify the surety,
they can not do so until he is actually damnified, or at least
has become absolutely liable for the debts; for they must

claim through him by subrogation, and until then he himself has no remedy upon it. Brandt on Suretyship and Guaranty (2d Ed.), Vol. 2, Sec. 326; Ohio Life Ins. Co. v. Reeder, 18 Ohio, 35; Osborn . v. Noble, 46 Miss. 449, and cases there cited.

But if given for the better security of the debts themselves—as, for their payment by the principal debtor, or to provide the surety with means to pay them in case of his default—then, although the purpose is also to indemnify the surety to the same extent, a trust attaches to the security for the benefit of the creditors indicated, to which the court will give effect. Moses v. Murgatroyd, 1 Johns. Chy. 119; Homer v. Savings Bank, 7 Conn. 484; Osborn v. Noble, *supra;* Paris v. Hulet, 26 Vt. 308; Eastman v. Foster, 8 Metc. 19; Aldrich v. Blake et al., 134 Mass. 582; Brandt on S. & G., Secs. 282-285.

The controversy here is mainly over the construction of the mortgage. For appellant the contention is that it was given as security for the notes held by the Central Bank, and only as indemnity to the sureties on the others, and appellees, admitting the provision for the bank notes, as claimed, insists that the same was made for theirs.

Appellant bases his construction upon the terms of the instrument, and the points of expression claimed to show a distinction made between these debts, as summarized by counsel, are the full description of the bank notes only; the express statement that it was given to secure their payment; that they are the first mentioned; the definite statement of the liability of the mortgagees as sureties thereon, and the fact that no other obligations of the mortgagors are mentioned as actually existing. The truth of these recitals is undisputed, but so far as they may seem to distinguish the bank debt in its favor, they are made insignificant by the parol proof which shows that the mortgage was given at the instance of the bank alone, whose claim was more than three times as large as all the others combined; that it was drawn under the direction of its cashier, in the absence of the parties thereto and by its own attorney, who had its notes and

so could describe them fully, and knew by information of the mortgagor that other notes against him were then outstanding, on which his brothers were liable as sureties, but did not know any further particulars, and for that reason only, as he testified, did not put them in.     John P. Smith testified that besides the notes involved in this suit there was no paper out against him on which his brothers were sureties.

Other parol evidence, the admission of which was objected to, and is assigned for error, was to the effect that for a considerable time before the instrument in question was executed, the cashier and attorney were pressing Smith to make a mortgage directly to the bank to secure its notes, which he persistently refused to do on the sole ground that he was indebted on other paper, also signed by his said brothers as sureties, which he should secure as well, but expressed his willingness to execute such a mortgage as he now understands this to be; that when it was shown to him by the cashier he made some objection and wanted explanation, for which he was referred to the attorney, who testified that the explanation wanted was of the defeasance, and that Smith asked him " whether it furnished indemnity and security for all his paper."

He must have known that his answer was understood to be affirmative, for upon it Smith consented to execute the mortgage as it was drawn and now appears.

If, and so far as this or any parol evidence tended to vary or contradict the plain meaning of the written instrument, it was not proper to be considered, and there is no presumption that any such was considered by the court.     But so far as it tended to identify the subject-matter referred to in general terms in the instrument or by showing the situation, condition and mutual relations of the parties to it makes clear their meaning by the language used, which from it alone might be uncertain, it would be competent.     The court, in order the better to understand the instrument in such case will seek to place itself in the situation of the parties. Wilson v. Roots, 119 Ill. 379; Burgess v. Badger, 124 Id.

288; Home National Bank v. Estate of Waterman, 30 Ill. App. 535. The bank was not a party to it, but claimed it had a certain meaning to its advantage. Could it well complain of the court's knowing and holding as the true construction what the parties themselves alike intended and understood by it, if it was reasonable though not clear from the language itself? Ibid.

But we see nothing uncertain in the terms of the contract. Its meaning seems unmistakable, needing no aid upon any point from parol evidence, and making no room for construction. With that meaning the testimony objected to is entirely in harmony. The expressions referred to and relied on as favoring the bank's view of it could not give to that creditor any priority of right over others whose claims are by it placed in the same category, so far as respects the moral obligation, legal liability and actual intention of the mortgagor.

The purpose of a mortgage is most certainly manifested by the condition on which it is to become void, for its whole and sole purpose is to secure the performance of that condition. Other parts should be considered in connection with it to assist, if necessary, in the ascertainment of its meaning. But nowhere in the one before us is there a word expressive of a purpose to indemnify the sureties, as distinct from that of securing the debt or addition to it. Though drawn by a learned and able lawyer, it contains no language, technically or commonly employed, to express a contract for indemnity. Certainly the performance of the condition would have indemnified them, and because that effect was certain and palpable, a distinct purpose of the mortgagor to produce it must be admitted as a necessary implication from the statement of their contingent liability for the debts. That implication, however, is just as true of the claims of the bank as of the appellees, and therefore gives no precedence to either. Allowing it all the force of an expressed purpose to indemnify the sureties it would not bar the claim of either of those creditors to share in the proceeds of the security as a *cestui que trust*, if the mortgage was given to secure the debt also.

That it was so given is conclusively shown, by the condition which provided that the mortgaged premises should be reconveyed to the mortgagor, his heirs or assigns, " when each and all of which " (being the four notes held by the bank) " shall have been duly paid by said J. P. Smith" (the mortgagor and principal debtor), " together with any other sums for which said James D. Smith and Lloyd B. Smith" (the mortgagees and sureties), " or either of them, may be liable on, either as surety or guarantor of and for the said John P. Smith." Under the class description naming the principal debtor and sureties, the notes held by appellees could be as easily and certainly identified as if the date, payee, amount, when due, and rate of interest of each, had been added; for it includes, without exception, all debts of the class so described.

This condition would be broken by default of the mortgagor in the due payment of any such debt, and the mortgage subject to foreclosure, though the surety had not been damnified, or had been discharged from liability by some statute of limitation, or by an extension of the time of payment by the creditor without consent of the surety, or otherwise, and whether the mortgage was executed when or after the debt was contracted, or the creditor had or had not any knowledge of its existence. The proceeds of the foreclosure sale would be applied in due proportion on the unpaid debt, and such application would be made by the mortgagees, not of their own will, but by force of the mortgage. Thus it is shown by its terms and operation that the mortgage, whatever else may have been an ultimate object, was a provision for the payment alike of all the debts referred to by the mortgagor, or out of his means as far as they would go, and that the mortgagees were trustees for the creditors. The notes held by the appellees, respectively, were all given before the mortgage was executed, and matured later than any or some of those held by the bank. Both the attorney and the cashier knew of the existence of some such indebtedness as, for all purposes of security, was linked to the notes it held, by terms as plain

as could be used—"together with"—and so were put upon inquiry as to its amount and other particulars which would have led to certain and definite information. The bank, therefore, can not justly complain of any wrong done by giving due effect, in the interest of appellees, to the instrument prepared by its own representative, and which was, in our opinion, to protect and secure on equal terms, pro rata, all the notes involved in this suit.

It is further contended that the decree on the cross-bill in the Wilson case is *res adjudicata* against appellees Prewitt, Johnson and Warren, though they were not parties to the suit, because they claim under and through James D. and Lloyd B. Smith, who were.

But they do not so claim. The relation they sustain to them is not that of privies in estate but of *cestuis que trust.* Their right is derived directly from the mortgage, and the trustees were powerless by any act or default of their own to release or prejudice it.

For the reasons stated the decree will be affirmed.