CASE 47—PETITION EQUITY—OCTOBER 24.

## Macklin, &c., v. Northern Bank of Kentucky.

APPEAL FROM KENTON CHANCERY COURT.

</div>

SURETIES—SUBSTITUTION OF CREDITOR.—Where property is pledged by a stranger to *indemnify* a surety, and not with the intention that it shall be applied to the payment of the debt in order to relieve the surety, it can not be subjected by the creditor, nor can the surety

subject the property until he has shown that he has sustained loss, or is in such a condition as that loss must be necessarily sustained.

In this case the surety, against whom judgment has been rendered, being insolvent, property mortgaged to him by the daughter of the debtor to save him harmless can not be subjected either by him or by the creditor.

O'HARA AND BRYAN FOR APPELLANTS.

1. Equity will not subrogate the creditor to an indemnity given the surety by a stranger, unless it be under circumstances of inducement to the creditor to extend the credit upon the faith of the indemnity, at the instance of the party giving the indemnity, thereby creating a priority between the stranger and the creditor. (Cooper, &c., v. Martin, &c., 1 Dana, 28; Francis v. Smith, 1 Duvall, 124.)

2. The surety can not subject the property mortgaged to indemnify him until he has paid the debt or some part of it. Recovery of judgment against him is not sufficient.

McKEE AND FINNELL FOR APPELLEE.

1. The judgment in the former action between the same parties is not a bar to this action, as the two suits are wholly distinct and different.

2. The surety's cross-petition, charging that the release of the mortgage was obtained from him by fraud, having been taken for confessed, the mortgage should be treated as in full force, and the mortgaged property should, at the instance of the surety, be subjected to the payment of the debt the mortgage was executed to secure.

3. A petition being taken for confessed, every specific charge therein is admitted. (Lyme v. Beall, 7 Dana, 420; Atterberry v. Knox & McKee, 8 Dana, 284; Kendrick v. Fields, 2 Bush, 154.)

4. As to the power of the court, at a subsequent term, to set aside an order taking a petition for confessed. (Alexander, &c., v. Quigley, &c., 2 Duvall, 402.)

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

John J. Macklin gave to the Branch of the Northern Bank of Kentucky at Covington his note or bill, with P. Guilfoyle as indorser, for the sum of two thousand dollars. For the purpose of securing Guilfoyle as indorser or surety on the paper, and to indemnify him as such, the appellant, Mary E. Macklin, executed to him a mortgage on a lot of

ground that she held in her own right, situate on Holman street in Covington. The paper at its maturity was protested, or at least has never been paid, and the liability of the indorser still exists, and the bank has prosecuted its claim to judgment.

The maker of the paper, as well as the surety, Guilfoyle, are insolvent, and the bank regarding the mortgage as a security for the debt, asks to be subrogated to the rights of the surety, and that the property be subjected to the payment of its judgment. Guilfoyle, to whom the mortgage was executed, at the instance, as he alleges, of the appellant and her father, executed to the appellant a release of the mortgage, reciting that he had received other indemnity that constituted a consideration for the release.

Having been made a defendant to the original petition filed by the bank, Guilfoyle, in his answer and cross-petition against the appellant, alleges that the release of the mortgage was obtained by fraud, and upon the statement by the appellant and her father that the debt had been satisfied. To the answer and cross-petition of Guilfoyle no answer was filed by the appellant.

The bank alleges that the father conveyed the property to his daughter, the appellant, in fraud of the rights of creditors, and seeks also to subject the property on that ground.

There is no evidence of any actual fraud in the transaction between the appellant and her father in the execution of the conveyance to her of the real estate sought to be subjected. The conveyance was executed before the debt was created by her father

to the bank, and, therefore, is not fraudulent as to the bank, nor is there any proof in the record showing the existence of a fraudulent purpose as to creditors.

If the failure to answer the cross-petition of Guilfoyle is an admission of a fraudulent purpose on the part of the appellant in obtaining the release of the mortgage, the question then presented is as to the right of recovery by the bank or Guilfoyle against the appellant by reason of the mortgage. It is not pretended that the appellant was in any manner liable for the debt to the appellee (the Northern Bank), or that the mortgage was executed by the appellant as a security for the debt. It is true that such is the statements in the petition of the bank and in the cross-petition of Guilfoyle, but the proof in the case, or, in the absence of proof, the exhibits evidencing the liabilitity of the appellant, show that the only purpose on the part of the latter in executing to Guilfoyle the mortgage was to indemnify him as the surety.

There is no mistake alleged in the execution of the deed, or the subsequent writing by Guilfoyle, showing it to have been a mortgage, and, therefore, the only question is, did the appellant pledge her real estate as security for the debt, or did she mortgage it to the security to save him harmless in the premises?

The question, we think, can be readily answered. The contract or agreement as to indemnity between the surety and the appellant was purely personal, and intended to indemnify the surety, Guilfoyle, and for no other purpose.

The mortgage was not designed as a security for the debt, but to indemnify the surety in the event he had the debt to pay. "*Upon being discharged or released from liability,*" the land was to revert to the mortgagor, the appellant.

The rule is, that when the security is given with the intention that it shall be applied to the payment of the debt in order to relieve the surety, or to enable the creditor to make his debt, he will be substituted to the rights of the surety; but when the pledge of the property is to indemnify the surety only against payment, it becomes personal, and presents entirely a different question.

When the case was in this court on a former hearing, at the instance of the bank seeking to be substituted to the rights of Guilfoyle, this court reversed the judgment below, for the reason that it created a contract between the appellant and the bank that before had no existence in making the mortgagor liable for a debt the surety had never paid, and when indemnity was to the surety alone and for no other purpose.

The creditor can be substituted where the surety holds the property as a mere trustee; that is, where the property is pledged to the surety for the payment of the debt. Such agreements and trusts, says Chancellor Kent, are "executed for the better protection of the debt, and a court of chancery will see that they fulfill their design." (Kip v. Bank of New York, 10 Johns., 63.)

The case, however, returns to this court in a different phase from that presented at the former

hearing. In this case the surety, Guilfoyle, is in court with a judgment against him for the debt, asking that his security for indemnity be subjected to its payment.

It is not, however, averred that the surety has ever paid one dollar of this debt, or that his property has been seized by order of the Chancellor for its payment; but, on the contrary, the record discloses the fact that Guilfoyle is insolvent, and that the bank is attempting to set aside the conveyance to the appellant by her father of this particular real estate on the ground of actual fraud.

This court has heretofore determined that, as between the bank and the appellant, there was no contract to pay this debt, and that the only purpose of the mortgage was to save the surety harmless in the premises. The mortgage is, in fact, an agreement on the part of the appellant that her property may be subjected to the payment of any loss he may sustain by reason of his undertaking, not that her property is to be subjected to the payment of a debt to the bank evidenced by an obligation upon which her name does not appear either as principal or indorser, but that if the surety has the debt to pay, he shall be indemnified out of her real estate.

The rule is well settled, that if the surety has obtained indemnity from his principal, the creditor may have his debt satisfied out of it; and if the indemnity is against a contingent liability, the creditor can not be substituted until the liability becomes absolute, that is, until the claim is reduced to judgment. Then the liability becomes fixed and certain.

Nor will it be doubted that in such a case the surety, who is coerced by execution or made liable by the judgment for the debt, can proceed at once against his principal, and have the indemnity, whether in the form of realty or personalty, sold to pay the debt; and, in fact, we perceive no reason why the surety may not, when sued for the debt, even if the indemnity is upon the contingency of a loss to be sustained, when that indemnity comes from the debtor, proceed at once to have the debt satisfied out of the indemnity. It is the debtor's property, given to secure the surety; and being primarily liable for the debt, the Chancellor can do no wrong in subjecting it.

In this case, the party giving the indemnity is a stranger to the contract, and the indorser seeking indemnity comes into a court of equity utterly insolvent, and claims that he has sustained an injury, when it clearly appears there has been no breach of the covenant contained in the mortgage, or loss sustained. The surety, from his own showing, has not been damaged. He has paid no part of the indebtedness, and before the Chancellor will listen to his complaint, he must show that he has paid the debt or some portion of it, or that his property has been seized for its payment. It must appear that he has been damaged, or that he must sustain the loss by reason of the proceedings against him before he (the surety) can have relief.

Guilfoyle, when asking the Chancellor to enforce his claim for indemnity, shows that he is insolvent, and that the contingency upon which the appellant's

liability depends has never happened. The Chancellor's decree in this case is, that the property be sold to satisfy the debt due the bank. We have already adjudged that the bank has no claim against the appellant, but at last the latter is made liable for no other reason than the insolvency of the principal and surety on the note to the bank.

The bank has no right to substitution, nor has the surety to the bank any claim against the appellant, until he shows that he has sustained loss, or that he is in such a condition as that loss must necessarily be sustained.

This he has failed to do; but, on the contrary, has placed himself in a condition where no loss is to be apprehended, and this affirmatively appears. As the case now stands, he is liable for the debt, and when he pays it, or shows that he has been damaged, then it will be proper for the Chancellor to indemnify him to the extent of the damage sustained, but not sooner.

Judgment reversed, and cause remanded for proceedings consistent with this opinion.