# DECISIONS

OF THE

# COURT OF APPEALS OF KENTUCKY.

## SEPTEMBER TERM, 1888.

CASE 60—PETITION EQUITY—SEPTEMBER 15, 1888.

## Taylor v. Farmers' Bank of Kentucky.

### APPEAL FROM CAMPBELL CIRCUIT COURT.

PRINCIPAL AND SURETY—SUBROGATION.—Where a security is given by a principal to his surety, it operates *eo instanti* as a security to the creditor for the payment of his debt; but where a security is given by a stranger to indemnify the surety, and not for the payment of the debt, a trust does not attach to it for the creditor, and he cannot be subrogated to the rights of the surety. · Nor is it material that the security was given by the wife of the principal, she being a stranger to the debt.

NELSON & WASHINGTON FOR APPELLANTS.

1. After judgment against him, Menzies might have enforced the mortgage in his own behalf (Tilford, &c.. v. James' Adm'r, 7 B. M., 336; Haven v. Foudry, 4 Met., 247, 249), and, therefore, the bank might likewise have done so.

2. The creditor is entitled to be substituted to any security held by the surety as indemnity. (Sheldon on Sub., secs. 162, 163; Northern Bank of Ky. v. Macklin, &c., MS. Op.) And this is especially true where the principal debtor and his surety are *insolvent,* as in this case. (Bispham's Principles of Equity, sec. 337, and cases cited.)

    The right of the creditor is to be measured by that of the surety who holds the indemnity. (Sheldon on Subrogation, section 157; 7 B. Mon., 337.)

3. The creditor may, if necessary, compel the surety to *surrender* to him the security he holds. (Redfield, Ch. J., in McCollum v. Hinckly, 9 Ver., 143, 149; Sheldon on Sub., sec. 154.)

4. It is immaterial in this case that it was the wife's property that was pledged. (Sheldon on Sub., sec. 104.)

5. The fact that Mrs. Timberlake, who furnished the security, was not a party to the debt due the bank, is not a material circumstance. (Alexander v. Ellison, 79 Ky., 153.)  Northern Bank of Ky. v. Macklin, MS. Op., commented on.

6. The creditor can substitute his assignee to his right of subrogation. (Sheldon on Sub., section 248; Neely v. Jones, 16 W. Va., 641; Richmond v. Martin, 15 Ind., 137; 1 Leading Cases in Equity, 113, and authorities cited.)

W. H. MACKOY for SUSAN A. TIMBERLAKE, one of appellees.

1. The contract or agreement of indemnity was purely personal, and intended to indemnify the surety alone; and the surety never having paid any part of the debt, nor sustained any damage, and being wholly insolvent, there has been no breach of the condition of the mortgage. (Macklin v. Northern Bank of Ky., 2 MS. Opinions of date June 19, 1879, and October 24, 1885 (7 Kentucky Law Rep., 277); Leggett v. McClelland, 39 Ohio St., 624; Osborne v. Noble, 46 Miss., 449; Horner v. Savings Bank, 7 Conn., 478.)

2. The execution of the mortgage on the part of Mrs. Timberlake was purely gratuitous; and a gratuitous promise will not support an action. (McGee v. Bast, 7 J. J. M., 455; Proctor v. Keith, 12 B. M., 253; Buford v. McKee, 1 Dana, 107; Sawyer v. Fernold, 59 Mc., 500; Hetherington v. Hixon, 14 Ala., 297; Bishop on Married Women, vol. 2, sec. 374.)

3. The appellants having undertaken to show what the consideration for the mortgage was, the presumption of a consideration ceases. (Steadman v. Guthrie, 4 Met., 152.)

JUDGE HOLT DELIVERED THE OPINION OF THE COURT.

This is a question of subrogation.   October 10, 1877, William Timberlake drew a bill of exchange for seven thousand one hundred and forty dollars and three cents upon Henry C. Timberlake, payable to the order of ·John W. Menzies.   It was indorsed by the latter, after having been accepted by Henry C. Timberlake, and then delivered to the latter and negotiated by him for his benefit.

March 18, 1878, the Farmers' Bank of Kentucky sued the three parties above-named upon the bill, and

subsequently recovered a judgment. Execution upon it was returned *nulla bona*, save about one thousand dollars, made out of the estate of William Timberlake, the Timberlakes and Menzies being insolvent. The latter was an accommodation indorser, and has never paid any thing upon the judgment. March 21, 1878, the appellee, Susan A. Timberlake, her husband, Henry C. Timberlake, joining with her as a legal necessity to the step, mortgaged to John W. Menzies a tract of land belonging to her.

The condition of the mortgage is as follows: "This conveyance is made to secure, indemnify and save harmless the said Menzies against any loss he may sustain by reason of his indorsement of a draft, dated October 10, 1877, drawn by William Timberlake, on the said Henry C. Timberlake for his accommodation, at four months, for seven thousand one hundred and forty dollars and three cents, and indorsed by said Menzies, and negotiated by said Henry C. Timberlake for his own benefit, and upon which the Farmers' [Bank of Kentucky has brought suit in the Kenton Circuit Court; and if said Menzies is not required to pay any part of said claim, this conveyance will stand for naught, otherwise it will remain in full force. * * * * * * * * The said Menzies is not to permit any loss to fall upon him which he can lawfully prevent, as this conveyance is for his benefit, and not made for the purpose of securing any part of said claim, which he may avoid by any and all lawful efforts."

December 7, 1882, the bank, by a written transfer, assigned the judgment to the appellants, together with

" all the rights and equities of every kind or nature " ·connected with it.

Henry C. Timberlake died insolvent in 1880; and on December 12, 1882, the appellants brought this action, asking to be substituted to all the rights of Menzies under the mortgage of indemnity to him, and that the land of Mrs. Timberlake be subjected to the payment of their judgment.

The matters above recited are to be taken as true, as they are set out in the petition, and it was dismissed upon demurrer.

It is urged that there was no consideration to support the mortgage. It was executed after the bill of exchange, and indeed after suit had been brought upon it. If Menzies had paid any thing, and were seeking to enforce the mortgage, suspicion arises from this record that if issue were made, and proof taken upon a plea of no consideration, it would be in his way.

The writing, however, imports a sufficient consideration. True, this presumption ceases when the party relying upon the writing undertakes to show the consideration by his pleading. (Steadman v. Guthrie, &c., 4 Met., 147.)

Here, however, the appellants did not do this; but merely state the purpose of the mortgage. The real question in the case is now reached. Had the bank a right to be substituted to Menzies' place under the mortgage ? If so, then the appellants, as its assignees, have the same right.

The doctrine of subrogation comes to us from the civil law. It is not the creature of contract, but of

natural equity, although it has been said that it may
be modified by contract.    It is applied between par-
ties where the circumstances require it, that essential
justice may be afforded ; but not where it will work
injustice to others.

The rule is well-settled, that where a security is
given by a principal to his surety, it operates *eo in-
stanti* as a security to the creditor for the payment
of his debt.    This right of the latter can not be de-
feated even by the release or conveyance of the surety
or mortgagee, unless the liability be contingent, save
to a *bona fide* purchaser without notice ; and if con-
tingent, the surety can not defeat it after his liability
becomes fixed.    The reason of this rule is, that the
security given by the principal debtor to his surety
is regarded in equity as a trust fund for the payment
of the debt.    All the property of the principal debtor
is liable for his debt ; and it does not lie in his mouth,
therefore, to say that it is not in trust for the cred-
itor when pledged to the surety as indemnity.    The
creditor may, through the medium of the surety, re-
sort to the property thus placed in trust for the pay-
ment of the debt, and is invested by equity with all
the rights of the surety.

In such a case the security is for the debt, as well as
the ultimate protection of the surety.    It is at once
clothed with a trust character ; and the creditor im-
mediately acquires a right and interest in it that can-
not be defeated by the act of the surety.    He becomes a
trustee for the creditor.    So, too, upon like principles
of justice or natural equity, where a principal indem-
nifies one of several sureties, he becomes a trustee for

the others, and each is entitled to share the indemnity. The estate of the principal is liable for the debt, and his obligations to them are equal.

A different state of case is presented, however, where the contract of indemnity is by a stranger to the debt, and for the personal benefit of the surety merely, in opposition to the idea of a trust for the payment of the debt. In such a case the indemnity is not out of the estate of the principal.

It was said in the case of Osborne, &c., v. Noble, 46 Miss., 449 : "We think the principle has been stated and enforced, that if the security be purely personal, as to indemnify and save harmless the surety, and not for the better protection of the debt, or intended as a fund for its payment, a trust does not attach to it for the creditor."

Here Mrs. Timberlake was in no way liable for the debt. The fact that she was the wife of Henry C. Timberlake makes no difference. The indemnity was not out of his estate. The wife was under no obligation to pay the debt; and must be regarded, as indeed she was, as a stranger to it. It was no fraud upon the creditor to merely indemnify the surety. As the property belonged to her, if the mortgage created no lien to secure the payment of the debt, then no trust was created in favor of the creditor, since it is certain that the bill of exchange was not accepted upon the faith of the indemnity. It was not furnished to the surety until long after the creation of the debt, and indeed not until suit was brought upon it.

Her contract must be regarded as one merely to save the surety harmless; as undertaking merely to indem-

nify him against the payment of the debt; and pledging the mortgage property to him for whatever he might be compelled to pay, and not as security for the payment of the debt.    It is true the mortgage recites: "The said Menzies is not to permit any loss to fall upon him which he can lawfully prevent, as this conveyance is for his benefit, and not made for the purpose of securing any part of said claim, which he may avoid by any and all lawful efforts;" but when the entire instrument is considered, it is evident the purpose was merely to indemnify Menzies.

This being so, no right of subrogation exists in behalf of the appellants.    Their claim is not supported by that equity which would attach to it if the debt had been accepted upon the faith of an indemnity created by the mortgage for its payment.

These views are supported and ably enforced by the opinions in the cases of Leggett v. McClelland, 39 Ohio St., 624, and Macklin, &c., v. Northern Bank of Kentucky, 83 Ky., 314; and the judgment below is affirmed.