CASE 79—PETITION EQUITY—APRIL 7.

# Black, &c., v. Kaiser.

APPEAL FROM LOUISVILLE LAW AND EQUITY COURT.

1. THE FAILURE OF A GUARDIAN TO MAKE SETTLEMENTS at stated periods, as required by the statute, is a breach of the covenants of his bond.

2. A WARD MAY HAVE AN ACTION AGAINST HIS GUARDIAN TO COMPEL A SETTLEMENT, and to such an action the surety in the guardian's bond is a proper party, both for the purpose of concluding him, and for the purpose of enforcing payment in the same action of any sum which may be found due the ward.

3. PLEDGE OF PROPERTY TO SURETY—RIGHT OF CREDITOR TO SUBSTITUTION.—Where property is pledged to a surety with the intention that it shall be applied to the payment of the debt for which he is bound, the creditor is entitled to be substituted to the rights of the surety; but where the property is pledged by a stranger merely to indemnify the surety, and not for the payment of the debt, no right of substitution exists.

4. THE SURETY IN A GUARDIAN'S BOND IS LIABLE FOR A DEBT WHICH THE GUARDIAN OWED THE WARD at the time of his appointment, provided the guardian was then solvent.

5. A BILL OF EXCEPTIONS may be tendered at any time during the term at which the judgment becomes final; and a term of the Louisville Law and Equity Court lasts for this purpose sixty days from the determination which renders the bill necessary.

KOHN, BAIRD & SPECKERT FOR APPELLANTS.

1. Time may be given during the term at which the judgment becomes final to reduce to writing the exceptions taken on the trial of a case. (Civil Code, sec. 337, subsec. 2.)

2. The failure of the guardian to make a settlement of his accounts constitutes a breach of his bond.

3. To an action against the guardian for a settlement of his accounts the surety is a proper party, so as to preclude him by the settlement ascertained, and to recover in one suit from both the principal and surety such an amount as may be shown to be due the ward on the settlement.

4. The guardian must be considered as having actually received as assets of his wards the sum of two thousand dollars, for which he sold the Chestnut street property, and his surety is responsible for this amount.

A guardian is bound to exercise, for the benefit of his *cestui que trust*, all the powers and advantages of every description which he

Black, &c., v. Kaiser.

derives from that position, or at least he is disabled from exercising them for his own private benefit. (Van Epps v. Van Epps, 9 Paige, 238; Longest's Adm'r v. Tyler's Ex'r, 1 Duv., 192.)

5. It is the duty of the guardian to gather in the ward's estate, and secure such claims and debts as ordinary care and prudence would dictate to a man in the management of his own affairs under like circumstances, and for any dereliction of duty in this regard he will be held responsible on his bond. (Clay v. Clay, 3 Met., 553; Hemphill v. Lewis, 7 Bush, 215; Boaz's Adm'r v. Milliken, &c., 83 Ky., 636.)

The appointment of a person as guardian against whom the ward holds a debt is not a discharge of the debt, and the guardian is under the same responsibility and alike answerable on his bond for a failure to collect a debt from himself or secure a claim in his own hands as he is from another. (Speed's Ex'r v. Nelson's Ex'r, 8 B. M., 499; Boyd v. Gault, 3 Bush, 645; Tanner v. Skinner, 11 Bush, 122; Rowans, &c., v. Manons, &c., Superior Court, 9 Ky. Law Rep., 317; Sargent v. Wallis, 3 S. W. Rep , 721; Bockenstead v. Perkins, 34 N. W. Rep., 489; Stephens v. Gaylord, 11 Mass., 269; Mattoon v. Cowing, 13 Gray, 390; McWilliams v. Norfleet, 63 Miss., 186; Flynn v. Carter, 59 Ala., 368; Benjamin v. Hillard, 23 How., 149.)

SELBY HARNEY on same side.

Additional authorities cited: Clements v. Ramsey, 9 Ky. Law Rep., 172; Cotton v. Wolf, &c., 14 Bush, 238.

LANE & BURNETT, O'NEAL, JACKSON & PHELPS FOR APPELLEE.

1. The paper copied into the record as a bill of exceptions can not be considered by this court as any part of the record, because, at the time the trial judge signed it, he was without power to do so. (Vandever v. Griffith, 2 Met., 425; Lind v. Reynolds, 6 Bush, 547; 12 Bush, 119; 7 Bush, 474.)

2. The sureties upon the bond of a statutory guardian are liable only for such money or property as comes into the hands of the guardian as such. (Gen. Stats., chap. 48, art. 2, sec. 15.)

3. Sureties are not liable for past defaults, unless made so by the express terms of the bond. (Murfree on Official Bonds, sec. 300; Farrar v. United States, 5 Pet., 373; State v. Jones, 89 Mo., 470; Lowry v. State, 64 Ind., 421; State v. Sanders, 62 Ind., 562; State v. Page, 63 Ind., 209; State v. Paul, 21 Mo., 21; Clark v. Wilkinson, 59 Wis., 543; Myers v. United States, 1 McLean, 493; United States v. Gyles, 9 Cranch, 215; United States v. Lynn, 1 How., 104; United States v. Boyd, 15 Peters, 187; Vivian v. Ottis, 24 Wis., 520; State v. Hood, 7 Black., 127; Rochester v. Randall, 105 Mass., 295; note to Commonwealth v. Stub, 51 Am. Dec., 523.)

CHIEF JUSTICE HOLT DELIVERED THE OPINION OF THE COURT.

This is an action by the appellants, Black and wife, to compel a settlement of the accounts of Julius Mendel as her former guardian, and to recover from the appellee, Frank Kaiser, who is surety upon his bond, certain specific sums named in the petition, and such other amount as may be found due upon a settlement.

The lower court sustained a special demurrer to the petition, and then, after refusing an amendment which was tendered, dismissed the action.

By an amendment to section 337 of the Civil Code, a bill of exceptions may be prepared at any time during the term at which the judgment becomes final, and a term of the lower court from whence this appeal comes lasts for this purpose sixty days from the determination which renders the bill necessary.

The one making the amended petition, that was tendered, a part of the record, was filed in time, and it shows that an exception was taken to the rejection of the amendment. Both it and the petition are, therefore, to be considered in determining whether the action was properly dismissed; and upon this question their statements are to be taken as true.

Aside from their averments relating to the two specific sums sought to be recovered, and at which the special demurrer was directed, there was sufficient matter stated to support the action. The guardian was appointed in March, 1879, and this action was brought in March, 1888. The petition, as amended, avers his appointment and qualification; the execution by him and the appellee, as his surety, of the proper bond, which is set forth in full; that he had

received two certain sums of money that are specifically named, and also other sums, the amounts and dates of which could not be given, and had failed to settle his accounts, and, on demand, to pay the female appellant any part of her estate.

The bond covenanted that the guardian should perform his duty as required by law. A very important part of this duty, and one specially required by our statute, is the making of settlements at stated periods. Manifestly there was a breach of the covenants of the bond set forth, aside from the averments of the two pleadings relative to the two special sums of money which are sought to be recovered. The ward was entitled to a settlement, and to the action to compel it, the surety was a proper party, both for the purpose of concluding him and to enforce payment for any sum which might be found due the ward. There is no need of more than the one action. The rights of all parties can be properly adjusted at once, and multiplied litigation avoided. It was error, therefore, to dismiss the action. Counsel have discussed at length the liability of the surety for the specific sums claimed in the petition. The question will arise upon the return of the case, and it is not improper, therefore, to indicate the law applicable to it so far as can be done upon the present state of the pleadings. It is proper to do so in a general way only, and upon the assumption that the averments of the petition as amended are true.

Z. D. Mendel was first the guardian of the female appellant. Julius Mendel became his surety upon a bond given in the Chancery Court for the withdrawal

and proper investment of the ward's means. An action was subsequently brought upon this bond to ascertain how much the guardian was indebted by reason of having obtained these funds, and the amount was found to be about fifteen hundred dollars.

To indemnify Julius Mendel against any loss by reason of this suretyship, a stranger to the transaction, Rachel Mendel, executed to him a mortgage upon a lot of ground. It is also averred in the petition that for the like purpose Z. D. Mendel gave him one thousand and seventy-seven dollars and sixty-six cents of the ward's money that had been withdrawn from court for investment.

In April, 1877, Julius Mendel sued to reap the benefit of the mortgage given him as indemnity. The lot was ordered to be sold, and he was given a prior lien upon it to the amount of his liability as surety. It was sold in April, 1879, and purchased by him at seven hundred and seventy-five dollars. He had then become the guardian of the female appellant, Z. D. Mendel having resigned the trust. Julius Mendel subsequently sold the lot for two thousand dollars, which is stated to be nearer its real value.

The appellants claim the right to recover of the appellee, Kaiser, the one thousand and seventy-seven dollars and sixty-six cents of the ward's money paid to Julius Mendel when he was not her guardian, but the surety of her then guardian; also one-half of the two thousand dollars for which the lot was sold, the suretyship, as to which he was indemnified by it, having been for Z. D. Mendel as guardian for both the appellant and her sister. The appellee claims

that these sums of money did not come into the hands of his principal when or after he became guardian, but, if at all, before then; and that there is, therefore, no delinquency as guardian for which he as surety is liable.

The pleadings are not full or explicit. If Julius Mendel did not use any of the money of the ward in the purchase of the lot, then no right of subrogation exists, unless it be because the mortgage was given to secure any loss on account of the Z. D. Mendel guardianship. Neither state of case is alleged. If the security by the mortgage of the real estate, coming as it did from a stranger, was merely to indemnify the surety, and was personal to him, then a different case exists from where the security is given with the expectation and intention that it shall be applied to the payment of the debt in order to relieve the surety, and to enable the creditor to collect it. In the latter case the creditor will be substituted to the rights of the surety, but not as in the former. When the surety holds the property as a mere trustee, and it is really pledged for the payment of the liability, then the creditor will be substituted to the rights of the surety. How far these rules may control in this case it is impossible to tell in the present state of the pleadings. They do not now aver a state of case showing a liability arising out of the sale and purchase of the lot by Julius Mendel. (Macklin, &c., v. Northern Bank, 83 Ky., 314.)

The case is otherwise, however, as to the money of the ward averred to have been given to him by

the former guardian. It is a general rule that a surety is not liable for a past default, unless made so by the express covenant of his bond; and that his liability is measured by the terms of the bond. One of the most important duties, however, of a guardian upon assuming the trust is to secure the estate of the ward. This is expressly enjoined upon him by our statute. He must use the same diligence in this respect which an ordinarily prudent man would exercise in his own affairs under like circumstances. If, when one is appointed guardian, he be the debtor of the ward, then, by reason of assuming the trust, he is enabled to retain the fund. It would be a waste of time and effort to require him as an individual to pay it to himself as guardian; to provide a proper way to do so would require ingenuity, and if in such a case the surety is not liable for what he may owe, provided he be then solvent, then the helpless infant is likely often to be the sufferer.

The surety binds himself that the guardian will faithfully husband the ward's estate; that he will collect it at the proper time, and faithfully care for it. When he thus binds himself that the guardian will thus, whenever needed, take the actual possession of it, and always care for it, what good reason can be given why, if the guardian owes it and is solvent when he qualifies, the surety should not be bound for it? His liability is not then more enlarged than it would be if a solvent third party had the money or estate. If one, when he becomes executor, owes a debt to the estate, and be solvent, his surety becomes liable for it. Equally as much rea-

son exists in this case, if not more, than in that
one. If it were not so, one could, by qualifying as
guardian, often cause the loss of the debt owing by
him to his ward by his long subsequent insolvency.
His appointment would, in effect, often be a discharge
of it. It is his duty upon his appointment to gather
in the ward's estate, and secure such claims as a man
of ordinary prudence would regard in danger. His
surety binds himself that he will do so, and this be-
ing the measure of his liability, he should certainly
be held liable for the debt due by his solvent prin-
cipal, who is intrusted with the control of all of the
estate. The debtor guardian has placed himself in
the way of any other person having the right to col-
lect the debt; the surety has enabled him to do so;
he can not sue himself, and he should, in legal con-
templation, be held to have paid the debt to himself
as guardian, and his surety, therefore, liable. This
does not treat the bond as retroactive, and this view
is supported by the cases of Mattoon v. Cowing,
&c., 13 Gray, 390, and Sargent v. Wallis, 67 Texas,
483. In the latter case it was said : "If a person
appointed executor, administrator or guardian be a
debtor, admittedly, at the time of his appointment,
to the estate of which he is made the representative,
having voluntarily assumed the trust, and his sure-
ties having obligated themselves that he will faith-
fully execute it, and thus prevented the appointment
of any other person, and being unable to sue himself,
he must, in legal contemplation, be considered to have
paid the debt to himself, and to continuously hold
the money so long as his representative character con-

tinues, and his sureties, as well as himself, therefore liable for it."

We do not mean to hold, of course, what liability, in fact, if any, exists in this case, but only to indicate the law upon the facts as at present admitted by the pleadings.

Judgment reversed, with directions to overrule the demurrer, and for further proceedings consistent with this opinion.