O'NEILL, PLAINTIFF, *v.* STATE SAVINGS BANK ET AL., DEFENDANTS; GARDINER, INTERVENER AND RESPONDENT; PEIRIE, INTERVENER AND APPELLANT.

(No. 2,332.)

(Submitted November 13, 1906.   Decided December 4, 1906.)

*Principal and Surety—Appeal Bonds—Subrogation—Creditors —New Trial—Newly Discovered Evidence.*

Appeal Bonds—Principal and Surety—Creditors—Subrogation.
    1.   In an action to recover on an appeal bond, where it appeared that a stranger to the original action had deposited in bank a sum of money to indemnify the sureties on the bond, the principle of subrogation, embodied in section 3700 of the Civil Code, creating in favor of the creditor a trust which attaches to the property of the principal debtor when sought to be appropriated to the benefit of the surety, may not be invoked by the creditor.

Appeal Bonds—Sufficiency—Failure to Except—Presumptions.
    2.   From a failure to except to the sufficiency of sureties on an appeal bond, the presumption arises that it was sufficient.

Appeal Bonds—Principal and Surety—Withdrawal of Indemnity—Who may Object.
    3.   Where a stranger to an action in which an appeal bond was required, deposited a sum of money to indemnify the sureties, no one but the sureties could object to the withdrawal of the indemnity; and, such objection not having been made, the court properly awarded the sum deposited to the heir of the deceased depositor.

District Court—Reopening Case—Discretion—Review.
    4.   To permit a case to be reopened for the purpose of hearing further proof in a civil case, lay within the discretion of the trial court, and its action in the premises is reviewable only in case of abuse of such discretion.

New Trial—Newly Discovered Evidence—Affidavit—Sufficiency.
    5.   An affidavit filed by an attorney in support of a motion for a new trial on the ground of newly discovered evidence, stating that he and opposing counsel had stipulated that the deposition of a witness, then out of the state, should be taken; that he relied upon such stipulation; that he asked counsel once where the witness could be found

and was informed he did not know but would ascertain; that he never received the desired information; and that neither he nor his client knew what the absent witness would testify to until after the trial, *held* insufficient to move the discretion of the court, where for a month prior to trial affiant and his client must have known, from a complaint filed in intervention, of the character and importance of the testimony of the witness, and where, if .misled by opposing counsel, affiant did not make application for a continuance.

Same.

6.  Where, from an affidavit filed in support of a motion for a new trial on the ground of newly discovered evidence, it did not appear that movant knew the whereabouts of a witness whose testimony was relied upon and that there was a reasonable probability that it could be secured if *ı.* new trial were granted, the district court cannot be said to have abused its discretion in refusing a new trial.

*Appeal from District Court, Silver Bow County; Geo. M. Bourquin, Judge.*

Action by William O'Neill against the State Savings Bank and others, Nellie Gardiner and James Peirie intervening. From a judgment for intervener Gardiner, and an order denying him a new trial, intervener Peirie appeals. Affirmed.

*Mr. John J. McHatton*, for Appellant.

It was claimed in the court below that, by reason of the appeal bond given to the supreme court, the bond on appeal from the justice's court was released, but such is not the law. (*Shannon v. Dodge*, 18 Colo. 164, 32 Pac. 61; *Rockwell* v. *District Court*, 17 Colo. 118, 31 Am. St. Rep. 265, 29 Pac. 454; *Marquette County* v. *Ward*, 50 Mich. 174, 15 N. W. 70; *Babbitt* v.*Finn*, 101 U. S. 7, 25 L. Ed. 820.)

The moment the judgment against Kellogg became final, the sureties on the bond were liable. (Civil Code, secs. 3630, 3631, 3655; *Coburn* v. *Brooks*, 78 Cal. 443, 21 Pac. 2; *Botkin* v. *Kleinschmidt*, 21 Mont. 1, 5, 69 Am. St. Rep. 641, 52 Pac. 563; *Tuttle* v. *Hardenberg*, 15 Mont. 219, 38 Pac. 1070; *People* v. *Penniman*, 37 Cal. 271; *Wood* v. *Orford*, 56 Cal. 157; *Nichols* v. *Dunphy*, 58 Cal. 605.)

Although a demand was made, this was not necessary before bringing suit or before the liability of the sureties arose. (*Nelson* v. *Donovan*, 16 Mont. 85, 86, 40 Pac. 72.) A refusal or neglect to pay is a breach of an appeal bond. (*Ryan* v. *Kinney*, 2

Mont. 454, 457.)   The terms of the bond are binding upon the parties, and the bond was for the payment of "the amount of the judgment appealed from and all costs if the appeal be withdrawn or dismissed, or the amount of any judgment and all costs that may be recovered against them in said action in the district court aforesaid, not exceeding the sum of $867." The terms of the bond, therefore, control.   (*Armington* v. *Stelle,* 27 Mont. 13, 94 Am. St. Rep. 811, 69 Pac. 115; *Riddell* v. *Peck-Williamson H. & V. Co.,* 27 Mont. 44, 57, 69 Pac. 241, 242; *Bullard* v. *Smith,* 28 Mont. 387, 399, 72 Pac. 761, 763; *Gaffney Merc. Co.* v. *Hopkins,* 21 Mont. 13, 52 Pac. 561; *Sanford* v. *Gates, Townsend & Co.,* 21 Mont. 277, 289, 53 Pac. 749, 753.)

Where a surety takes or receives a deposit or security on account of the obligation which he has assumed, the same, in equity, inures to the benefit of the creditor.   The surety is entitled to pay the same in discharge of the obligation, or the creditor is entitled to have the court award the same to him in satisfaction, or part satisfaction, thereof, and we submit the following as absolutely sustaining appellant's right: Civ. Code, secs. 3654, 3656; *Pendery* v. *Allen,* 50 Ohio St. 121, 33 N. E. 716, 19 L. R. A. 367; *Van Orden* v. *Durham,* 35 Cal. 136; *South Omaha Nat. Bank* v. *Wright,* 45 Neb. 23, 63 N. W. 126; *First Nat. Bank* v. *Wheeler,* 12 Tex. Civ. App. 489, 33 S. W. 1093; *Durham* v. *Craig,* 79 Ind. 121; *Webster* v. *Mitchell,* 22 Fed. 869, 870; *Meeker* v. *Waldron,* 62 Neb. 689, 87 N. W. 539; *Union Nat. Bank* v. *Rich,* 106 Mich. 319, 64 N. W. 339; *Lindsay* v. *Morse,* 129 Mich. 350, 88 N. W. 881; *Nourse* v. *Weitz,* 120 Iowa, 708, 95 N. W. 251; *Harlan County* v. *Whitney,* 65 Neb. 105, 101 Am. St. Rep. 610, 90 N. W. 993; *Jennings* v. *Taylor,* 102 Va. 191, 45 S. E. 913; *Crim* v. *Fleming,* 101 Ind. 154; *Johnson* v. *Bartlett,* 17 Pick. (Mass.) 477; *Myres* v. *Yaple,* 65 Mich. 403, 32 N. W. 442; 24 Am. & Eng. Ency. of Law, 1st ed., 815.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

James Peirie commenced an action in the justice of the peace court in Silver Bow county in 1897 against William O'Neill, and

George F. Kellogg, and such proceedings were had that plaintiff recovered a judgment against the defendants for $297.80 and costs. The defendants thereupon appealed to the district court and executed an undertaking on appeal in the sum of $867, conditioned as required by section 1763 of the Code of Civil Procedure. This was a joint and several undertaking and was signed by O'Neill and Kellogg as principals, and Robert Julien and P. A. Largey as sureties. In order to indemnify the sureties, the sum of $700 was deposited in the State Savings Bank. Such proceedings were had in the district court that a judgment was returned in said cause in favor of plaintiff Peirie and against the defendant Kellogg. Thereafter Kellogg prosecuted an appeal to the supreme court of Montana, but, on motion of respondent, this appeal was dismissed. Peirie then prosecuted an action against the surety Robert Julien and recovered a judgment, but no part of the judgment so recovered has ever been paid, neither has any part of the judgment recovered by Peirie against Kellogg been paid. O'Neill brought this action against the State Savings Bank to recover the $700 deposited with said bank to indemnify Largey and Julien. Peirie filed a complaint in intervention in which he seeks judgment against O'Neill on account of his having signed the undertaking on appeal from the justice of the peace court to the district court, and seeks to subject to the satisfaction of such judgment the $700 deposited with the State Savings Bank. Nellie Gardiner (*nee* O'Rourke) also filed a complaint in intervention, in which she alleges that of the $700 deposited in the State Savings Bank, the sum of $350 was deposited by Robert Julien; that thereafter Julien withdrew his $350 of said $700, and that her father, Charles O'Rourke, deposited $350 with said bank in lieu of the like amount withdrawn by Julien and for the same purpose for which the original sum was deposited, and that she is now entitled to recover this $350 so deposited by her father.

The defendant State Savings Bank made answer disclaiming any interest in the money in controversy, was permitted to deposit the same in the court, and was discharged from the case.

Issues were joined by the plaintiff O'Neill, and the interveners Peirie and Gardiner. The cause was tried to the court sitting without a jury. The court found that Peirie recovered judgment in the justice of the peace court against O'Neill and Kellogg; that an appeal was taken by the defendants to the district court; that the appeal bond was executed by O'Neill and Kellogg as principals, and Julien and Largey as sureties; that O'Neill and Julien deposited the $700 in the bank to indemnify Julien and Largey against any loss by reason of their having signed the undertaking on appeal; that afterward Julien withdrew $350 of said amount, and Charles O'Rourke, a stranger to the former transactions, deposited the like amount in lieu thereof and for the like purpose; that O'Rourke, or Nellie Gardiner (*nee* O'Rourke), was to be repaid this $350, if not necessary to indemnify the bondsmen. The court also found that no part of the judgment recovered by Peirie against Kellogg has ever been paid, and that O'Neill has no property within the jurisdiction of the court, except his interest in the $700 on deposit. From the findings of fact the court concluded that one-half of the $700 is a trust fund to which Peirie may resort for satisfaction of his claim, and that the other half, not being necessary to indemnify Largey and Julien, is the property of the intervener Nellie Gardiner, and judgment in her favor for that amount was duly entered, from which judgment, and an order denying his motion for a new trial, the intervener Peirie appeals. We have not been aided by any brief on behalf of respondent Gardiner.

At the time of the trial of this cause the judgment in favor of Peirie and against Kellogg amounted to more than the $700. The contention of the appellant is that the money deposited in the bank to indemnify the sureties Julien and Largey inured to his benefit, and that the whole amount should have been awarded to him in satisfaction, or part satisfaction, of his claim. The trial court was not entirely accurate in its finding of fact No. 4, that the $350 deposited by O'Rourke was to be paid to him or Nellie Gardiner, if not necessary to indemnify said bondsmen. The testimony shows that the $350 deposited by O'Rourke in

lieu of the like amount withdrawn by Julien was to be paid back to O'Rourke, or Nellie Gardiner, "if O'Neill wins suit and bondsmen are released." The suit referred to was the one by Peirie against O'Neill and Kellogg, then on appeal to the district court. The testimony respecting the deposit made by O'Rourke was introduced over the objection of this appellant, and complaint is now made of this ruling of the trial court. But we think the ruling was correct. A material question for determination was, Who furnished the indemnity to Julien and Largey? That the $700 was deposited with the State Savings Bank to indemnify and save harmless Julien and Largey on account of their having become sureties on the appeal bond admits of no doubt. The evidence also appears to be sufficient to support the finding of the court that in April, 1898, Julien withdrew the $350 deposited by him, and O'Rourke deposited a like amount in lieu thereof and for the same purpose as the original deposits were made.

Appellant invokes the rule of equity jurisprudence stated by Pomeroy as follows: "The doctrine and remedy of subrogation are extended also to the creditor, who is subrogated to and entitled to the benefit of all securities given to a surety for purposes of his indemnification by the principal debtor; and also between co-sureties, so that one surety, in enforcing his rights of exoneration and of contribution, is subrogated to securities given to his co-surety." (3 Pomeroy's Equity Jurisprudence, sec. 1419.) The same general rule is embodied in our Code. Section 3700 of the Civil Code reads as follows: "A creditor is entitled to the benefit of everything which a surety has received from the debtor by way of security for the performance of the obligation, and may, upon the maturity of the obligation, compel the application of such security to its satisfaction." The difficulty which confronts the appellant is that this general rule stated by the text-writers and by our Code is not applicable to the facts presented by this appeal. The rule rests upon the principle of natural equity, which requires that property, in whatever form it may be, of him who is primarily liable for the payment of the debt shall be applied to the payment of the debt to

the exoneration of one who is only secondarily liable. It is the principle of subrogation, which creates in favor of the creditor a trust which attaches to the property of the principal debtor the moment it is appropriated to the benefit of the surety. (1 Brandt on Suretyship and Guaranty, sec. 360, note.) But, in any event, the rule so declares, and the principle above presupposes that the indemnity was furnished by the principal debtor. Where, however, the indemnity is furnished to the surety by a stranger, a trust does not attach in favor of the creditor, and he cannot be subrogated to the surety's rights. (1 Brandt on Suretyship and Guaranty, sec. 361.)

It was no fraud upon the creditor that O'Rourke should indemnify Julien and Largey, or either one of them. The appeal bond was amply sufficient when signed by Kellogg and O'Neill as principals, and Julien and Largey as sureties—at least, this is the legal presumption arising from a failure to except to the sufficiency of the sureties—and therefore no one could complain that O'Rourke, who was not liable at all on account of the judgment or the appeal bond, should indemnify the sureties, or, having once indemnified them, with their consent should withdraw the indemnity. There is no principle of natural justice which would apply O'Rourke's property to the discharge of O'Neill's liability except upon the precise condition upon which the property was appropriated, namely, that Julien or Largey should be compelled to pay on account of having signed the appeal bond. As O'Rourke's property was not liable to the discharge of O'Neill's liability, no one but the sureties could complain against the withdrawal of the indemnity at any time, either by O'Rourke in his lifetime, or by his daughter, the intervener Gardiner, and, as the sureties are offering no resistance, the court properly awarded the O'Rourke $350 to the intervener Gardiner. (*Leggett* v. *McClelland,* 39 Ohio St. 624; *Macklin* v. *Northern Bank,* 83 Ky. 314; *Taylor* v. *Farmers' Bank,* 87 Ky. 398, 9 S. W. 240; *Black* v. *Kaiser,* 91 Ky. 422, 16 S. W. 89; *Magoffin* v. *Boyle Nat. Bank,* 24 Ky. Law Rep. 585, 69 S. W. 702; *Hampton* v. *Phipps,* 108 U. S. 260, 2 Sup. Ct. 622, 27 L. Ed. 719.)

That intervener Gardiner is entitled to this $350 deposited by O'Rourke, if O'Rourke in his lifetime was entitled to the same, is not controverted. Strictly speaking, the court's conclusion of law No. 4 should have been to the effect that the money deposited by O'Rourke, a stranger to the proceedings theretofore, did not inure to the benefit of the intervener Peirie, and, as neither surety objected to its withdrawal, it should be awarded to the intervener Gardiner, its rightful owner. But no one is prejudiced by the inaccurate statement in the court's conclusion and therefore it need not be reformed.

It was within the discretion of the trial court to permit the case to be reopened and the witness Hodgens to be called, and we do not think any abuse of such discretion is shown in this record.

One of the grounds of appellant's motion for a new trial was newly discovered evidence, and this was supported by the affidavit of J. J. McHatton, attorney for appellant. This affidavit sets forth that, after intervener Gardiner filed her complaint in intervention, the attorney for the plaintiff arranged with him to stipulate to take the deposition of plaintiff O'Neill, who was then somewhere in California; that affiant relied upon attorney for plaintiff to take such deposition; that he asked attorney for plaintiff where plaintiff was and was informed that his attorney did not know his exact location but would ascertain; that plaintiff's attorney never informed affiant of O'Neill's exact whereabouts; that neither Peirie nor his attorney knew to what O'Neill would testify, but after this trial they were informed that O'Neill would testify that the $350 deposited by O'Rourke was a loan to O'Neill and was actually O'Neill's money; and finally, that from the date of the filing of Gardiner's complaint in intervention to the date of the trial "there was not sufficient time to investigate and locate said O'Neill and ascertain what he would testify to with reference to the deposit," etc. But on its face this affidavit is not sufficient. For a month before the trial, Peirie and his attorney knew that O'Neill claimed the entire $700 as his own, and that intervener Gardiner claimed $350 of it as

her own. O'Rourke was dead, therefore the people who would most likely know the truth respecting this deposit by O'Rourke were O'Neill and the persons actively employed in the bank. If intervener Peirie relied upon O'Neill's attorney to take his deposition and expected by proper cross-interrogatories to ascertain from O'Neill the facts, and was misled by plaintiff's attorney, possibly a proper application to the trial court for a continuance would have been granted; but no such application was made. Peirie went to trial and took his chances of winning without the testimony of O'Neill, and now, having been defeated, he asks to have an opportunity to present such testimony upon another trial. But with the facts before him as presented by the complaint of O'Neill, which claimed the $700, and the complaint in intervention of Gardiner, which claimed $350 of the same money, Peirie ought not to have relied upon plaintiff's attorney to take O'Neill's deposition, but ought to have proceeded to secure the same himself. At most, the affidavit states that affiant made inquiry *once* as to O'Neill's whereabouts, and in the absence of any showing of an attempt to find O'Neill, we do not deem conclusive the statement that there was not sufficient time to locate him. From the allegations in his complaint, O'Neill was the one person to whom Peirie would naturally have turned first to disprove intervener Gardiner's claim.

It does not appear from the affidavit that, if a new trial should be had, there is any reasonable probability that the testimony of O'Neill could be secured—in fact, it does not appear that appellant knows where O'Neill can be found. Under these circumstances we think the trial court cannot be said to have abused its discretion in refusing a new trial.

No error appearing, the judgment and order are affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY and MR. JUSTICE MILBURN concur.

Rehearing denied January 12, 1907.